*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

TERESA JONES,
     *Plaintiff-Appellant/Cross-Appellee,*

     *v.*

ILLINOIS CENTRAL RAILROAD COMPANY,
     *Defendant-Appellee/Cross-Appellant.*

Nos. 09-5504/5528

_____

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 07-02073—Bernice B. Donald, District Judge.

Argued: April 30, 2010

Decided and Filed: August 24, 2010

Before: MOORE and GILMAN, Circuit Judges; RUSSELL, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** John W. Chandler, Jr., THE LAW OFFICE OF MORGAN ADAMS, Chattanooga, Tennessee, for Appellant. Charles J. Swartwout, BOYLE BRASHER LLC, Belleville, Illinois, for Appellee. **ON BRIEF:** John W. Chandler, Jr., THE LAW OFFICE OF MORGAN ADAMS, Chattanooga, Tennessee, Pamela R. O'Dwyer, PATY, RYMER & ULIN, Chattanooga, Tennessee, for Appellant. Charles J. Swartwout, BOYLE BRASHER LLC, Belleville, Illinois, S. Camille Reifers, BOYLE BRASHER LLC, Memphis, Tennessee, for Appellee.

_____

[*]The Honorable Thomas B. Russell, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

—————————

**OPINION**

—————————

KAREN NELSON MOORE, Circuit Judge.  This case concerns a negligence action arising out of a collision between Teresa Jones's husband's vehicle and a train owned by Illinois Central Railroad Company ("Illinois Central").  After a jury returned a verdict of equal fault between Mr. Jones and the railroad, Mrs. Jones filed post-trial motions to vacate the judgment, for a new trial, for post-trial discovery or an evidentiary hearing, and for sanctions.  In support of those motions, she alleged that defense counsel had unreasonably resisted discovery requests and misled the court as to the truthfulness of a witness's statements.  Mrs. Jones further alleged that Illinois Central withheld information helpful to her case and bribed the aforementioned witness.  The district court agreed with the first set of charges but rejected the latter.  It therefore granted the motion for sanctions but denied the other motions.  Mrs. Jones now appeals the denial of her post-trial motions under Federal Rule of Civil Procedure 60.  The defendant cross-appeals the sanctions order.  As discussed below, we **AFFIRM**.

## I.  BACKGROUND

On November 1, 2003, Keith Jones was driving a fertilizer spreader eastward on Locust Grove Road in Dyer County, Tennessee, across a set of train tracks when he was struck by a northbound train.  Mr. Jones was thrown from his vehicle.  Though he survived, Mr. Jones sustained head injuries so severe that he lost all memory of the accident.

His wife, Teresa Jones, filed a negligence action in federal district court[1] individually and on behalf of her disabled husband, alleging that the train's owner, Illinois Central, had failed to identify the Locust Grove Road crossing as dangerous, to adequately warn motorists of the danger, and to manage vegetation in the area such that

———————————

[1]Mrs. Jones originally filed in state court, but later voluntarily dismissed that action and filed in federal court.  The preliminary discovery requests discussed below were made in state court.

an approaching motorist's view of oncoming trains would not be obstructed. Mrs. Jones also raised a number of related statutory claims concerning the upkeep of the crossing area. Illinois Central denied negligence and argued that Mr. Jones had been contributorily negligent in driving too fast and failing to stop for the train. After a two-week trial, a jury returned a verdict finding each party 50% at fault, resulting in no recovery.

Mrs. Jones then filed a series of post-trial motions concerning alleged wrongdoing by Illinois Central and defense counsel with respect to two issues: (1) disclosure of the recorded observations of two railroad crew members who witnessed the collision, and (2) false testimony by one Thomas Grace, who drove past Mr. Jones just before the collision.

***Train Crew Interview Notes and Statements.*** Jerry McKissick, a train conductor, and Harris Wood, an engineer, were waiting in a southbound train parked on the side of the main tracks, just north of the crossing, when the accident occurred. Thomas Martin, Illinois Central's claims agent, interviewed both McKissick and Wood about the collision and took notes on their observations. Later, Wood stated in a deposition, "I gave a statement to one of the risk managers," Wood Dep. at 16 (Dist. Ct. Dkt. Document ("Doc.") 64-3), raising the possibility in Mrs. Jones's mind that Illinois Central possessed at least one written or recorded statement, not merely notes, from the train crew.

Mrs. Jones filed a request for any and all statements, and notes related thereto, by McKissick and Wood. Illinois Central responded that the McKissick and Wood interview notes were "prepared in anticipation of litigation and/or [were] protected by applicable privilege, including attorney/client and work product." Doc. 189-1. Illinois Central thereafter switched law firms, retaining Ms. S. Camille Reifers as lead counsel. On February 28, 2008, Mrs. Jones moved to compel the production of the interview notes. On April 21, 2008, Ms. Reifers filed a response reasserting the attorney-client and work-product privileges.

On June 11, 2008, a magistrate judge held a hearing on the motion to compel and reviewed the documents in camera. They consisted of a post-it note with the phrase "Tom Martin's notes – talking to conductor of train in siding," and a single page of handwritten notes listing the names and phone numbers of McKissick, Wood, and a third person; a website address; the name of a highway; and the words "Huddson Scrapes." Doc. 183-1. The magistrate judge found no evidence that privilege attached to the single page of notes or the post-it note and ordered Illinois Central to produce them.

Ms. Reifers produced the documents on June 13, 2008. Plaintiff's counsel asked about the written or recorded statements that McKissick and Wood had given the claims agent, and Mrs. Reifers responded that she possessed no additional documents. On Sunday, June 15, the day before trial began, Ms. Reifers sent plaintiff's counsel an email stating the following: "Ten minutes ago I found Tom Martin's notes regarding the parked train crew. They were in an unmarked folder and appeared to be attorney notes." Doc. 246-4. This was a one-page document of handwritten notes recording Wood's and McKissick's observations and noting that they did not actually see the collision. That same day, plaintiff's counsel filed a motion for sanctions based in part on defense counsel's failure to turn over the actual statements that Mrs. Jones believed McKissick and Wood had provided to the railroad.

***Thomas Grace.*** Grace was driving a farm truck westbound on Locust Grove Road when the accident occurred. After he crossed over the railroad tracks, he had a near-collision with Mr. Jones's fertilizer spreader. After Mr. Jones passed him, Grace heard the train's whistle blow, looked into his rearview mirror, and saw the crash. At his deposition, Grace testified that his near-accident with Mr. Jones occurred "maybe ten feet" west of the railroad crossing—"right at the tracks." Grace Dep. at 26 (Doc. 246-1). This testimony supported Mrs. Jones's argument against contributory negligence: a reduced awareness of his surroundings would be expected of Mr. Jones if he had almost been in an accident immediately prior to reaching the tracks.

On May 19 and May 21, 2008, plaintiff's counsel spoke to Grace and confirmed that he would testify at trial consistent with his deposition. Grace also indicated that he

was in dire financial straits.  On May 22, Ms. Reifers met with Grace at his home for about forty-five minutes and showed him an aerial photograph of the crossing.  At that point, Grace indicated that the near-accident occurred close to a bridge on Locust Grove Road, some 300 feet west of the crossing.  On June 2, plaintiff's counsel again confirmed that Grace would testify consistent with his deposition.

On the first day of trial, June 16, defense counsel asked plaintiff's counsel when the plaintiff planned to call Grace to the stand.  Plaintiff's counsel answered June 18.  That night, plaintiff's counsel called Grace to tell him he would not have to be in court until June 18.  Grace's father answered the phone and said that Illinois Central had put Grace up in a hotel in Memphis that very night.  The next morning, June 17, Grace appeared at the courthouse.  Outside the courtroom, plaintiff's counsel again confirmed that Grace would testify consistent with his deposition.  Defense counsel also may have met with Grace that morning.

Plaintiff's counsel Pamela O'Dwyer decided to call Grace to the stand on June 17, since he had come to the courthouse.  On direct examination, Grace testified that he passed Mr. Jones somewhere between the railroad tracks and the bridge, at a point roughly 300 feet west of the tracks.  *See* Trial Tr. at 448.  Ms. O'Dwyer was surprised by this testimony because she had been expecting Grace to put the near-accident at ten feet from the crossing.  Ms. O'Dwyer tried to refer to Grace's deposition testimony, in which he had estimated a distance of ten feet, but Ms. Reifers objected to the plaintiff's impeachment of her own witness.  *Id.* at 450.  At sidebar, plaintiff's counsel John Chandler accused the defense of paying for Grace's hotel room the previous night and influencing his testimony.  The following discussion ensued:

> THE COURT:  Are you stating as an officer of the court that the railroad did not put this person out of the reach of the plaintiffs by putting him up in a hotel?
> MS. REIFERS:  Absolutely not, Your Honor.  In fact, this witness told us this morning that he stayed with a friend last night.  We had debated yesterday if it was proper under the rules if we could get him a hotel because he had to drive a specific distance and thought about asking the attorneys to split the cost [so] there would be nothing improper.

> MR. CHANDLER: That is what we were told by his father.
> MS. REIFERS: We don't know where he stayed. We don't have any control over this person.

*Id.* at 451. Ms. Reifers also denied telling Grace to appear for court that day. *Id.* at 452. The district judge then allowed plaintiff's counsel to use Grace's deposition to refresh his recollection. Grace acknowledged that he had estimated a distance ten feet from the crossing at his deposition but explained that upon seeing a photograph, he believed the near-accident happened farther west. *Id.* at 458–59. On redirect, Grace explained that Ms. Reifers in fact had asked him to appear that day. *Id.* at 479–80. Ms. O'Dwyer then brought out that Ms. Reifers had been to Grace's home a month earlier and shown him the photographs of the area. *Id.* at 474–75. Ms. O'Dwyer also referred to the deposition testimony again and reminded Grace that he had been under oath at that time. *Id.* at 476-78. Ms. O'Dwyer asked Grace directly, "did you tell your father that [the defendants] were putting you in a hotel?" He answered, "No, ma'am." *Id.* at 476. Then, outside of the presence of the jury but while still on the stand, Grace again testified that Illinois Central had not put him up in a hotel and that he had stayed with a friend the previous night. *Id.* at 480.

That afternoon, Ms. Reifers told the court that she learned over the lunch break that an attorney on her team had instructed "a paralegal to make the reservation on the understanding we would ask the plaintiff[']s lawyer to split the room cost." *Id.* at 487. The district judge postponed discussion of the issue until the next day, when Ms. Reifers clarified that she herself had been involved in a discussion about possibly paying for a hotel room but that she had not believed a reservation had been made. *Id.* at 635. She stated that once she found out her associate had in fact made the reservation, she wanted to bring it to the court's attention. She also stated that the defense had not actually contacted the plaintiff about splitting the cost, and that although she was charged for the room, she did not know whether Grace actually stayed at the hotel. *Id.* at 636–37, 641. Ms. Reifers denied talking to Grace any time other than at his home in May and again denied telling him to be in court on June 17. *Id.* at 637–38.

Plaintiff's counsel raised the issue again on June 24, alleging that Grace "was prepared, he was practiced to testify in the way [Ms. Reifers] wanted him to testify and not testify consistent with his deposition" because he "has either been paid money or promised a job by the railroad." *Id.* at 1592–93. Plaintiff's counsel asked for a jury instruction indicating that Grace had lied. *Id.* at 1593, 1595. Ms. Reifers denied the charge and represented that she had "tried to be as truthful as possible" with the court. *Id.* at 1598. At this point, the district judge remained unconvinced that Grace had lied or that Ms. Reifers had done anything unethical. *Id.* at 1601–02. The court ordered defense counsel to give plaintiff's counsel the name of the hotel so that plaintiff's counsel could investigate the issue. *Id.* at 1602.

The next morning, June 25, plaintiff's counsel revealed that they had learned from the hotel that Grace had in fact stayed there. *Id.* at 1664–65. Ms. Reifers indicated that the hotel had incorrectly charged her for extra nights for other witnesses, suggesting that Grace may not actually have stayed at the hotel. *Id.* at 1665. Plaintiff's counsel also provided the court with a proposed jury instruction on Grace's perjury. *Id.* at 1666.

The district judge recalled Grace on June 27, 2008. Outside of the jury's presence, Grace admitted that he had lied about staying at the hotel and explained that he had done so because someone representing the railroad told him "not to say anything about it." *Id.* at 2396, 2398, 2402. He stated, however, that he did not communicate with anyone from the defense while he was staying at the hotel and that he was not promised money or a job in connection with his testimony. *Id.* at 2398–99. Grace told the judge that no one had "suggested to [him] what [he] should or should not say during the course of [his] testimony." *Id.* at 2403. When the judge asked him to explain the discrepancy between his deposition and trial testimony about the location of the near-accident, he explained that he changed his testimony after seeing photographs of the crossing area. *Id.* at 2403–04. When asked by plaintiff's counsel why he had reassured her that he would testify consistent with his deposition, he answered, "I don't recall saying that I would testify exactly." *Id.* at 2404.

On June 30, the final day of trial, the district judge announced that she would instruct the jury as to Grace's false testimony. *Id.* at 2800. Illinois Central moved for a mistrial based on the adverse nature of the Grace instruction, but the motion was denied. *Id.* at 2832–34. When the jury entered, the district judge permitted plaintiff's counsel to read Grace's deposition testimony, including his statement that the near-accident occurred ten feet from the crossing, to the jury. *Id.* at 2848–56. The judge then gave the jury its charge, including the following instruction:

> Now you will recall that on Tuesday June 17, 2008 you heard live testimony from Thomas Grace, a witness to the collision at issue in this case. After the jury was excused from the courtroom, I asked Mr. Grace to stay and answer [a] few questions. I then asked Mr. Grace whether or not he had stayed the previous night in a hotel room paid for by the defendant. Mr. Grace denied under oath that he had stayed in a hotel room paid for by the defendant but instead stated that he stayed at a friend's house.
> Information later came to the court's attention that Mr. Grace's testimony regarding where he had stayed the previous night was not truthful. In fact, the court has determined that Mr. Grace did stay in a hotel room paid for b[y] the defendant the night before he testified in this case. Therefore, you may consider the fact that Mr. Grace testified falsely under oath about this matter, testified falsely about the matter of the hotel room, and you may consider his credibility in deciding any of the matters that are relevant to your determination of the issues in this case.

*Id.* at 2862–63. In her closing argument, Ms. Reifers told the jury, "[w]hen I realized that Mr. Grace had made a misstatement to this court, I informed the court of that. I did. Because that's my duty as an officer of the court." *Id.* at 3092–93.

***Post-trial Motions***. After the jury returned a verdict denying any recovery, Mrs. Jones filed motions to vacate the judgment, for a new trial, for sanctions, and for post-trial discovery or an evidentiary hearing based on Illinois Central's and defense counsel's alleged misconduct. That alleged misconduct involved the following: With respect to the evidence of the train crew's observations, Mrs. Jones claimed that defense counsel had no basis initially to refuse disclosure of the notes later ordered disclosed by the magistrate judge, and that defense counsel ultimately withheld written or recorded

statements made by the train crew. With respect to Thomas Grace, Mrs. Jones claimed that defense counsel falsely represented that they had not put Grace up in a hotel, falsely represented that they had not asked him to be in court on June 17, instructed Grace to conceal the fact of the paid hotel stay, and bribed Grace to change his testimony about the location of his near-collision with Mr. Jones on the day of the accident.

The court held a hearing on November 28, 2008, and issued its ruling on March 31, 2009. The district judge agreed that Illinois Central and defense counsel had unreasonably litigated the discoverability of the claims agent's notes from his interview of the train crew, but found no fault with the delayed disclosure of notes that Ms. Reifers found the day before trial. Importantly, the judge did *not* find that the train crew had made written or recorded statements, as opposed to oral statements memorialized in the claims agent's notes, or that defense counsel ultimately withheld any such statements. The district judge also agreed that Illinois Central and defense counsel had acted in bad faith and recklessly in telling Grace not to reveal that they had paid for his hotel room, in denying that they had asked Grace to be in court on June 17, and in failing to be forthcoming with respect to Grace's hotel stay and his perjury about that stay. Critically, however, the district judge rejected the notion that defense counsel bribed Grace to "move" the location of his near-accident farther west of the train crossing on Locust Grove Road. The district judge described this allegation as an "attempt to create some broader issues of misconduct [that] stems primarily from disappointment and disagreement with the jury's unfavorable verdict." Dist. Ct. Order at 20–21 (Doc. 270). She therefore denied the motions to vacate and for a new trial because the misconduct that had occurred had been adequately remedied by the court and did not prejudice Mrs. Jones in the end. The district judge also denied the motion for post-trial discovery or an evidentiary hearing due to Mrs. Jones's insufficient showing that defense counsel had engaged in the more egregious acts of withholding evidence and bribing a witness.

At the same time, the district judge granted the motion for sanctions. Finding that Ms. Reifers's conduct with regard to the train-crew disclosures "constitute[d] bad faith and an unethical attempt to distract opposing counsel from the real issues of the

case," the court sanctioned her under Federal Rules of Civil Procedure 11 and 26 and 28 U.S.C. § 1927. *Id.* at 15. With respect to the Grace matter, the district court found that "Ms. Reifers's actions and those of her legal team were 'unreasonable and vexatious' and inconsistent with their obligations as officers of the court," and sanctioned Illinois Central and defense counsel under § 1927 and its inherent power. *Id.* at 17, 20. The district court limited its sanctions award to the attorney fees that Mrs. Jones had incurred in pursuing the train-crew documents, investigating Grace's testimony, and preparing the sanctions motion.

Mrs. Jones now appeals the denial of post-trial relief under Federal Rule of Civil Procedure 60. Illinois Central challenges the sanctions order on cross-appeal.

## II. ANALYSIS

### A. Standard of Review

We review a district court's denial of a motion for postjudgment relief under Rule 60 for abuse of discretion. *See In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008). We also review for abuse of discretion the decision to impose sanctions pursuant to Rule 11, Rule 26, 28 U.S.C. § 1927, and the district court's inherent power. *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 527 (6th Cir. 2006); *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 525 (6th Cir. 2005); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *In re Ferro Corp.*, 511 F.3d at 623.

### B. Mrs. Jones's Appeal: Denial of Post-trial Relief

Mrs. Jones seeks post-trial relief based on misconduct that falls into two distinct categories: (1) the defense's misconduct, *found by the district court*, in fighting the disclosure of the claims agent's notes, in telling Grace not to reveal that he had stayed at the hotel, and in failing to be fully forthcoming about the Grace matter; and (2) the defense's *alleged* misconduct, *rejected by the district court*, in concealing actual

statements made by the train crew and in underhandedly securing a change of testimony from Grace.  We address each class of conduct separately.

### 1. Denial of Relief Based on Misconduct Found by the District Court

Mrs. Jones argues that the district court abused its discretion in declining to vacate the judgment and grant a new trial under Federal Rules of Civil Procedure 60(b)(3) and 60(d)(3) based on Illinois Central's and defense counsel's (a) resistance to disclosing the railroad's claims agent's notes on the parked train crew's observations, (b) representation that they did not arrange for Grace to appear in court on June 17, and (c) concealment and lack of diligence in bringing to light the truth of Grace's stay at the hotel.  Under Rule 60(b)(3), a district court may order relief from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Under Rule 60(d)(3), a district court may "set aside a judgment for fraud on the court."  The district judge found, in the course of discussing the motion for sanctions, that defense counsel had committed the aforementioned misconduct.  Contrary to Mrs. Jones's representations in her briefs on appeal, however, nowhere did the district judge conclude that that misconduct amounted to fraud on the court.  Ultimately, the district court did not vacate the judgment and grant a new trial on either basis.

Mrs. Jones advances two grounds on which the district court erred in denying relief:  first, that the court mistakenly put the burden on her to prove that the misconduct rendered the trial unfair; and second, that even if she bore the burden of proving unfairness, she met that burden.  Illinois Central asks that we not address these arguments because Mrs. Jones waived Rule 60 relief by failing to move for a mistrial before the jury returned its verdict.  We agree.

We have previously observed that "Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000) (internal quotation marks omitted); *see also Ackermann v. United States*, 340 U.S. 193, 198 (1950) ("[F]ree, calculated, deliberate choices are not to be relieved

from."). We have applied the waiver doctrine in circumstances similar to those in this case. In *Morton Butler Timber Co. v. United States*, 91 F.2d 884 (6th Cir. 1937), landowners claiming that the government had taken their property without just compensation sought a new trial based on the allegedly improper and prejudicial conduct of the government's attorneys. *Id.* at 889–90. We rejected the argument in part because the landowners waived it by failing to move for a mistrial. *Id.* at 890. In *Carter v. Tennessee*, 18 F.2d 850 (6th Cir. 1927), we held that a criminal defendant waived his argument for a new trial based on the prosecutor's prejudicial comments during closing argument because the defendant failed to call for a mistrial prior to judgment. *Id.* at 853; *see also United States v. Carter*, 45 F. App'x 339, 347–48 (6th Cir. 2002) (unpublished opinion) (same, but defendant dissuaded court from declaring mistrial and instead requested curative instruction). Likewise, Mrs. Jones did not request a mistrial. The option was obvious because Illinois Central *did* move for a mistrial.[2] On the Grace matter, Mrs. Jones instead requested and received a curative instruction and the opportunity to read Grace's deposition testimony to the jury. Having bet on the jury and lost, she is not permitted now to seek a new trial on the basis of potential prejudice that was apparent during trial.

*City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980), cited by Mrs. Jones, does not hold otherwise. There, the City of Cleveland sued a contractor for damage done to a city dock, and the jury returned a verdict for the City. During trial, counsel for the City made pervasive improper references to the size of the defendant's business operations and its insurance coverage. Defense counsel had objected repeatedly, and the judge had admonished and reprimanded the City's counsel and given curative jury instructions, but defense counsel apparently never moved for a mistrial. Nonetheless, we ordered a new trial. *Id.* at 755, 760. In that case, however, the City never challenged the propriety of granting Rule 60 relief despite the losing party's failure to seek a mistrial. Had we faced that argument in *City of Cleveland*, we would

---

[2]The reason for the parties' respective positions is clear: an instruction explaining that Grace lied about staying at a hotel paid for by the railroad would redound to the defendant's detriment.

have been bound to apply our clear precedent from *Morton Butler Timber Co.* and *Carter*, as we are in this case.

Mrs. Jones makes one more argument against waiver. She contends that she did not know the full scope of Illinois Central's misconduct until after the jury returned the case, and that the district judge had not become convinced of that misconduct until after trial. Mrs. Jones's position is directly contradicted by the record. Defense counsel's obstinacy in refusing to turn over the train-crew notes predated the trial, as did the magistrate judge's resolution of that controversy. Thomas Grace admitted that he had lied about the hotel stay, and that someone from the defense team told him to do so, on June 27, the penultimate day of trial. Any foot-dragging by the defense in investigating the Grace matter had already come to light by this time. So perturbed by these revelations was the district judge that she instructed the jury that in judging Grace's credibility, it could consider perjury that had occurred mostly outside of its presence.

Thus, this case is readily distinguishable from *Abrahamsen v. Trans-State Express, Inc.*, 92 F.3d 425 (6th Cir. 1996), and *Okros v. Angelo Iafrate Construction Co.*, 298 F. App'x 419, 429 (6th Cir. 2008) (unpublished opinion), both cited by Mrs. Jones. In *Abrahamsen*, we affirmed a grant of Rule 60(b) relief when defense counsel revealed to plaintiff's counsel a materially adverse statement, which should have been disclosed during discovery, only *after* the jury rendered its verdict. *Abrahamsen*, 92 F.3d at 427–29. In *Okros*, we reversed the district court's denial of a motion for relief from a jury's verdict for the plaintiff due to fraud on the court when it emerged only *after* trial that the plaintiff committed perjury and that his attorney may have known about it or acted in reckless disregard for the truth. *Okros*, 298 F. App'x at 420, 432. Here, Mrs. Jones had ample reason and opportunity to seek corrective action in the form of a mistrial before the jury returned its verdict. She chose not to. She cannot now demand a new trial.

**2. Denial of Post-trial Relief and Post-trial Discovery or an Evidentiary Hearing Based on the Allegations of Misconduct Rejected by the District Court**

Mrs. Jones next argues that a second category of more egregious misconduct warranted a new trial. She suspects that defense counsel concealed damaging written or recorded statements by McKissick and Wood—that is, information going beyond the claims agent's notes—and used improper means to convince Grace to change his testimony about the location of the near-accident. This sort of misconduct would certainly warrant a new trial, and waiver poses no barrier to our review because Mrs. Jones did not know of this alleged misconduct before the jury returned its verdict. The problem for Mrs. Jones, however, is that she cannot show that memorialized statements ever existed or that defense counsel bribed Grace. These are mere allegations, which the district court considered and rejected. *See* Dist. Ct. Order at 11 (mentioning "the alleged missing parked train crew statements" but making no finding that they actually existed); *id.* at 20–21 (finding credible Grace's statement that he changed his testimony after seeing a visual representation of the crossing area). We discern in the record no clear evidence of such misdeeds, and we therefore cannot say that the district court abused its discretion in failing to grant a new trial on that basis. Realizing this, Mrs. Jones argues that the district judge should have held an evidentiary hearing or allowed post-trial discovery to unearth what incriminating evidence might exist.

A district court may require the moving party to make some evidentiary showing of fraud before granting post-trial discovery or an evidentiary hearing. *See H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) (affirming denial of additional discovery into claims that party withheld crucial documents during pretrial discovery and that party's attorneys suborned perjury). Here, the district judge actually heard testimony relevant to Mrs. Jones's allegations of fraud during trial and held a hearing on Mrs. Jones's motion after trial, ultimately rejecting her allegations. We review that evidence to determine whether the district judge abused her discretion in declining to order yet further investigation.

Mrs. Jones's evidence that there exist recorded statements by McKissick and/or Wood consists mainly of (a) Wood's testimony during his deposition that he "gave a statement to one of the risk managers," Wood Dep. at 16 (Doc. 64-3), and (b) defense counsel's reference to "statements" in her objections to discovery requests. This evidence is paper thin. Part of Wood's deposition certainly implies that his statement is memorialized somewhere:

> Q. Did you review that statement to refresh your memory today?
> A. Did what?
> Q. Did you review that in order to refresh your memory?
> A. No, I did not.
> Q. When was the last time you saw that.
> A. When I gave it.

*Id.* But plaintiff's counsel is doing most of the talking in this excerpt. Wood did not testify that he gave a written statement or that the claims agent transcribed or made an audio recording of his oral statement. More importantly, during trial the district judge allowed the parties to examine a number of witnesses to determine whether memorialized statements might exist in this case. Claims agent Michael Collins testified that he did not know whether the crew interviews were recorded or written, that he had never seen any written statement, and that although his own practice was to record statements, this case might involve notes only. Trial Tr. at 2496–97. Claims agent Thomas Martin testified that he talked to the train crew and made notes but that he did not recall taking any statements. *Id.* at 2173. He further testified that at the time of the accident, railroad policy was to take notes rather than full statements. *Id.* at 2177. Charles Baker, a claims agent who began working four years after the accident, testified that although he preferred witnesses to write out their own statements, the railroad had no set policy to record statements and that some cases involved handwritten notes only. *Id.* at 2349–67. As for the use of the word "statements" in Illinois Central's discovery responses, Ms. Reifers explained that predecessor counsel had used the word first and that she had no documents other than what she had produced. Mot. Hr'g Tr. at 40 (Doc. 306). On this record, there is no compelling evidence that any recorded or written statements actually exist.

Similarly, Mrs. Jones has no compelling evidence that Ms. Reifers or anyone else on the defense team asked Grace to lie about the location of his near-accident with Mr. Jones. An unidentified member of the defense team told Grace to conceal the fact that he had stayed at the hotel. It remains unclear why. The implication arises that the defense also bought his material testimony. But both plaintiff's counsel and the district court explored this possibility. The district judge accepted Grace's testimony that he did not lie about anything other than the hotel stay and that he changed his testimony after seeing an aerial photograph of the crossing area. Plaintiff's counsel represents that Grace told her moments before testifying at trial that he would put the location of the near-accident at ten feet from the crossing, O'Dwyer Aff. ¶ 17–18 (Doc. 246-2), but Grace disputed this, Trial Tr. at 2404, and the district judge was not obligated to accept plaintiff's counsel's version of the events. Finally, Ms. Reifers insisted in court that she had exerted no improper influence on Grace. Mot. Hr'g Tr. at 45–55. The only thing left to do was put Ms. Reifers and other members of her team on the stand and ask under oath whether they bribed Grace. Absent further evidence of impropriety, the district judge committed no error in declining to do so.

In sum, the district court did not abuse its discretion in denying post-trial discovery and an evidentiary hearing based on Mrs. Jones's insufficient showing that defense counsel ultimately withheld material information or bribed Grace.

## C. Illinois Central's Cross-Appeal: Sanctions

A district court has several sources of authority to sanction parties and attorneys for misconduct. Federal Rule of Civil Procedure 26(g) requires an attorney or the party personally to certify that discovery responses and objections are supported by nonfrivolous argument and are not aimed to harass, cause delay, or drive up litigation costs. The rule requires a court to impose sanctions for any violation without "substantial justification." Fed. R. Civ. P. 26(g). Under Rule 11, a court may sanction an attorney who presents court filings for an improper purpose or based on frivolous arguments. Fed. R. Civ. P. 11. Section 1927 of Title 28 of the U.S. Code provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Finally, a court has inherent authority to sanction bad-faith conduct in litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980).

Here, the district court imposed sanctions for two reasons. It found that Ms. Reifers's resistance to Mrs. Jones's request for documents relating to the train-crew interviews "constitute bad faith and an unethical attempt to distract opposing counsel from the real issues of the case." Dist. Ct. Order at 15. The district court reasoned that because the documents were not plausibly privileged, Ms. Reifers's actions were unreasonable, vexatious, and without substantial justification. The court therefore imposed sanctions under Rule 26, Rule 11, and § 1927. The district court also imposed sanctions under § 1927 and its inherent power for Ms. Reifers's conduct with respect to the Grace matter. It found that "Defendant's counsel and legal team acted in bad faith in an initial attempt to hide the fact that Defendant had paid for Mr. Grace's hotel room the night before testifying"; that "Ms. Reifers acted in bad faith in denying that her staff had called Mr. Grace and told him to be at trial on Tuesday, June 17, 2008, despite the fact that Mr. Grace explicitly stated that they had"; and that "Ms. Reifers acted recklessly and failed to fulfill her obligation as an officer of the Court to be completely forthcoming with all available information and, instead, forced Plaintiff's counsel and the Court to spend unnecessary time procuring information readily available to Defendant." *Id.* at 18 (citation omitted).

Illinois Central makes three arguments that the district court erred. First, it contends that case law supported defense counsel's resistance to disclosing the train-crew materials and that the sanctions were imposed "solely because Defendant's objections to production were ultimately overruled." Appellee/Cross-Appellant's Br. at 63. Illinois Central cites three out-of-circuit cases to support its claim that the train-crew notes were protected by work-product privilege. All are indeed railroad-accident cases in which the court held that witness statements taken by a claims agent in anticipation of litigation were not discoverable except on some showing of good cause,

such as inability to obtain the information through other means. *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 926–27 (4th Cir. 1962); *Hauger v. Chi., Rock Island & Pac. R.R. Co.*, 216 F.2d 501, 508 (7th Cir. 1954); *Almaguer v. Chi., Rock Island & Pac. R.R. Co.*, 55 F.R.D. 147, 149 (D. Neb. 1972). All three of these cases, however, involve actual statements. By contrast, the documents over which Ms. Reifers struggled consisted of a post-it note and one page of handwritten notes listing the witnesses' names and phone numbers. As the district court noted, "[t]he names and phone numbers would have already been turned over in Defendant's Rule 26(a)(1) initial disclosures, and the post-it note could hardly be considered by any reasonable attorney to be worthy of work product/privilege protection." Dist. Ct. Order at 15. Because there was no colorable argument of privilege here, the district court did not abuse its discretion in finding defense counsel's conduct to be vexatious and unreasonable. *See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006) (affirming sanctions because the actions in question "were taken, at the very least, in the face of an obvious risk [of] increasing the work on the other party without advancing the litigation"); *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986).

Illinois Central also explains that it felt obligated to resist disclosure of the train-crew notes because under *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289 (6th Cir. 2002), "once a client waives the privilege as to one party, the privilege is waived en toto." *Id.* at 294. As noted, however, the notes clearly were not privileged, and Illinois Central would not have been able to shield them from other parties on that basis. Moreover, to the extent that Illinois Central believed that disclosure of some arguably privileged communications would waive the privilege as to all other communications, it misread *In re Columbia*. In that case we rejected the notion of "selective waiver," which "permits the client who has disclosed privileged communications to one party to continue asserting the privilege against other parties." *Id.* at 294 n.5 (internal quotation marks omitted). We explicitly distinguished the concept of "partial waiver," which "permits a client who has disclosed a portion of privileged communication to continue asserting the privilege as to the remaining portions of the same communications," *id.* (internal quotation marks omitted), and we

did not hold that waiver of a privilege in one instance constitutes waiver in all instances. At most, disclosure of a privileged communication might result in waiver of communications on the same subject matter. *See United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255–56 (6th Cir. 1996). This concern could not have motivated Illinois Central, which claims that it possessed no other documents relating to the train crew's observations.

Second, Illinois Central argues that Rule 11 is not a proper basis for sanctions on the train-crew matter. We agree. By its own terms, Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). Moreover, Mrs. Jones did not move for sanctions under Rule 11, and the court should not have imposed Rule 11 sanctions sua sponte without first ordering defense counsel "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3), 11(c)(5). Nonetheless, these errors do not require a remand because the train-crew-matter sanctions were proper under Rule 26 and § 1927.

Third, Illinois Central argues that there was no evidence to support sanctions with regard to Grace's perjury. Specifically, the railroad insists that Ms. Reifers brought clarifying information to the court's attention as soon as it emerged and that her conduct did not rise to the level of unreasonableness or bad faith required under § 1927 and for exercise of the court's inherent power. This argument fails to acknowledge the district court's unambiguous finding that "someone from Defendant's legal team told Mr. Grace that he was not to testify that he had stayed in a hotel paid for by Defendant." Dist. Ct. Order at 18. It also overlooks the district court's finding that Ms. Reifers wrongly denied that her staff had instructed Grace to appear in court on June 17. *Id.* These acts support a finding of bad faith. Finally, Illinois Central misreads the district court's order as criticizing Ms. Reifers for "[s]imple inadvertence or negligence." Appellee/Cross-Appellant's Br. at 57. The court actually found that she had been *reckless* in denying any role in Grace's hotel stay without first investigating the matter, in dragging her feet despite the implication of possible perjury, and in causing plaintiff's counsel to waste

resources uncovering the truth. Dist. Ct. Order at 18–20. These acts support a finding of unreasonable and vexatious conduct under § 1927.

None of Illinois Central's arguments provide a basis for second-guessing the district court's award of sanctions. Accordingly, we conclude that the district court did not abuse its discretion.

## III. CONCLUSION

For the reasons discussed above, we hold that Mrs. Jones waived any claim to Rule 60 relief based on Illinois Central's unreasonable opposition to its disclosure requests and defense counsel's misrepresentations and recklessness regarding Thomas Grace. We further conclude that the district court did not abuse its discretion in declining to grant Rule 60 relief or to order further evidentiary proceedings regarding Illinois Central's alleged withholding of train-crew statements and bribery of Grace—matters that the district court investigated adequately. Finally, although the district court erred in invoking Rule 11, we uphold its entry of sanctions against defense counsel under Federal Rule of Civil Procedure 26, 28 U.S.C. § 1927, and the district court's inherent power. We recognize that this was defense counsel's first trial and that the case was highly fact-intensive and fiercely litigated. The district court retains discretion in this area, however, and we cannot say that it abused its authority. Therefore, we **AFFIRM**.