NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0098n.06

Nos. 13-6484, 13-6499

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 16, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NANCY J. MCCARTY, Individually, and as Personal Representative of the Estate of David W. McCarty, Deceased; LIBERTY MUTUAL AGENCY MARKETS, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| COVOL FUELS NO. 2, LLC, | ) ) | |
| Defendant-Appellee. | ) | |

BEFORE: SUHRHEINRICH, MOORE, and WHITE, Circuit Judges.

PER CURIAM.

David McCarty, a subcontractor, was killed during the installation of a garage door at the Defendant-Appellee Covol Fuels (Covol) coal mine in Muhlenberg County, Kentucky. McCarty's wife, Plaintiff-Appellant Nancy McCarty (Ms. McCarty) filed this wrongful death action individually and as personal representative of the estate of David W. McCarty (McCarty). Liberty Mutual Agency Markets intervened as a plaintiff in this action to protect its lien arising out of its provision of worker-compensation insurance. The district court granted summary judgment to Covol. Plaintiffs appeal.

Following oral argument, this Court certified a question of state law to the Kentucky Supreme Court. Having received its answer, we conclude that the district court did not err in granting summary judgment and affirm.

## I. FACTS

The facts relevant to this inquiry are quoted from our order of certification:

Plaintiff-Appellant Nancy McCarty ("Ms. McCarty") filed this wrongful death action individually and as personal representative of the estate of David W. McCarty ("McCarty"), deceased, against Covol Fuels No. 2, LLC ("Covol"). McCarty sustained fatal injuries falling from a ladder while installing a garage door to a building on property that contained Covol's mine. Ms. McCarty claimed that Covol's negligence proximately caused McCarty's death. Liberty Mutual Agency Markets ("Liberty Mutual"), McCarty's worker's compensation carrier, intervened in this action to protect its lien.

Covol operates the Minutemen Fines Recovery Plant, a coal mine in Muhlenberg County, Kentucky. Covol hired H & B Builders to construct a post-frame building at the facility. H & B Builders subcontracted the installation of an overhead commercial-grade garage door for the building to Evansville Garage Doors ("Evansville"). The ultimate use to which the building would be put is not clear from the record. McCarty was employed by Evansville and was the lead man for the garage door installation, during which he suffered fatal injuries. Although Evansville was a subcontractor, it did not obtain its own federal mine identification number; Evansville's workers were instructed to use Covol's federal mine identification number.

On February 26, 2009, McCarty and Jeremy Means ("Means") went to Covol's property to install the garage door. With the installation of the garage door nearly complete, McCarty and Means proceeded to check the tension spring in the door. McCarty and Means bolted the door to the tension wheel and used a forklift to raise the door to the height needed to keep the door from falling while they were working. After bolting the door to the tension wheel, McCarty and Means decided that they no longer needed the forklift to restrain the door. To make adjustments to the tension wheel, Means used a man-lift to put himself in position and McCarty positioned himself on the top of a ladder directly below the opening of the door. While checking the door's tension, McCarty and Means pulled down the garage door, which caused the door to fully descend and strike the ladder McCarty was standing on. Even though McCarty was wearing a safety harness and had tie-offs, he was not tied-off to anything that would have prevented his fall. As a result, McCarty fell from the ladder and hit his head against the concrete floor below.

Federal Mine Safety and Health Administration (MSHA) Inspector William Barnwell ("Barnwell") investigated McCarty's fall because the accident occurred on property also containing a mine. *See* 30 C.F.R. §§ 50.10, 50.11 (requiring MSHA notification and investigation of accidents that occur at mines). Under Kentucky law, "[m]ine" is defined as including "all buildings and equipment, above or below the surface of the ground, used in connections with the workings." KRS § 351.010(q).

Barnwell concluded in his report that McCarty's accident resulted from the placement of his ladder directly below the door and the lack of restraint devices used to prevent the approximately 1800 pound door from descending as it did when it struck the ladder. Barnwell reported that the "root cause" of the incident was that "[t]he steel curtain was not blocked from motion during the installation of the door as required in the manufacturer's installation manual." MSHA's Report, R. 51-1 at 12. Barnwell found the door itself free of any defects that would have contributed to the accident.

McCarty's widow brought this wrongful death action against Covol, asserting four theories of negligence: (1) common law duty to provide a safe workplace and safe equipment, (2) negligence *per se* for violating mine safety statutes and regulations, (3) voluntary assumption of duty for McCarty based on Covol's safety procedures and promises to furnish equipment and training, (4) contractual duty of care pursuant to the contract that Covol entered into with the Commonwealth of Kentucky.

Following discovery, Covol moved for summary judgment. The district court rejected Plaintiffs' common law theory, finding Covol's common law duty to McCarty was limited to warning him of hidden defects on Covol's premises, and that McCarty was not killed by such a defect. The district court dismissed Plaintiffs' negligence *per se* theory because McCarty did not fall within the class of persons meant to be protected by Kentucky's mining regulations and he was not injured by the type of hazards the regulations are meant to prevent. The district court dismissed Plaintiffs' voluntary assumption of duty theory for two reasons: (1) Covol did not assume duties to McCarty by adopting internal safety policies; and (2) McCarty did not detrimentally rely on any promises from Covol in installing Covol's garage door, and Covol's alleged promises did not increase the risk of McCarty's injury. Finally, the district court dismissed Plaintiffs' contractual duty of care theory because it found that McCarty was not an intended beneficiary of Covol's contract with the Commonwealth of Kentucky.

The district court granted Covol's motion for summary judgment and dismissed Ms. McCarty's negligence action. The district court also dismissed Liberty Mutual's claim because it was contingent on a finding of liability against Covol.

Plaintiffs timely appealed the district court's order granting summary judgment. Specifically, Plaintiffs claim that the district court erred in rejecting their negligence *per se* and voluntary assumption of duty theories.

*McCarty v. Covol Fuels No. 2, LLC*, Nos. 13-6484/6499, slip. op. at 2-5 (6th Cir. Sept. 22, 2014).[1]

Because it was "key to deciding whether the district court properly dismissed Plaintiffs' negligence *per se* claim," slip op. at 5, on September 22, 2014, we certified the following question to the Kentucky Supreme Court:

Whether a subcontractor injured while installing a garage door on an unfinished building at a mine site may maintain a wrongful death action against a mine operator under a negligence *per se* theory for alleged violations of Kentucky mining [statutes and] regulations, codified in KRS §§ 351-352 and KAR §§ 805-825.

*McCarty v. Covol Fuels No. 2, LLC*, Nos. 13-6484/6499, slip. op. at 2. On October 29, 2015, we received the following response from the Kentucky Supreme Court in its "Opinion of the Court By Justice Venters Certifying the Law":

Based upon our review of the applicable Kentucky law and the facts relevant to this inquiry, . . . we conclude that KRS Chapters 350, 351 and 352 and Kentucky Administrative Regulations (KAR) Sections 805 and 825 do not support a wrongful death action predicated upon a theory of negligence per se in the factual context presented here.

*McCarty v. Covol Fuels No. 2, LLC*, No. 2014 –SC-000589-CL, 2015 WL 6593081, at *1 (Ky. Oct. 29, 2015) (footnotes omitted).

## II. ANALYSIS

We review a district court's grant of summary judgment de novo. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013). Summary judgment is appropriate "if the movant

---

[1] Plaintiffs have not pursued on appeal the claims premised on a common law duty or a contractual duty of care.

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A. Negligence *Per Se* Theory

Plaintiffs claim that Covol is liable to them under a negligence *per se* theory because (1) Covol violated various coal mine safety statutes and regulations; and (2) KRS 446.070 creates a cause of action for "a person injured by the violation of any statute." After a thorough review of the relevant statutory provisions, Chapters 351, titled "Department of Natural Resources," and 352, titled "Mining Regulations," as well as three regulations, 805 KAR 7:090; 805 KAR 3:020; and 805 KAR 3:100, the Kentucky Supreme Court drew the following conclusions:

> From our review of KRS Chapters 351 and 352 in their entirety and in context, we conclude that Mr. McCarty was not "within the class of persons intended to be protected by the statute" as required for the application of KRS 446.070 and the principles of negligence per se, as set forth in *Straub*. We also conclude that the occurrence identified as the cause of McCarty's tragic death—the failure to secure the garage door in accordance with the manufacturer's installation instructions, and its subsequent fall—is not the type of occurrence that the foregoing mining statutes were intended to prevent. Consequently, the Estate's claims cannot be based upon a negligence per se theory predicated upon violations of KRS Chapters 351 and 352.

*McCarty*, 2015 WL 6593081, at *7.

As for the administrative regulations, the court determined that:

> None of the enabling statutes for the above-mentioned regulations contain language that would support the promulgation of regulations creating a duty owed by Covol to Mr. McCarty or the work in which he was engaged at the time of his accident. Any administrative regulation purporting to reach that hazard would fail as exceeding the scope of its enabling statute. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529 (Ky.2011).
>
> In summary, the administrative regulations cited by the Estate apply to mining operations, mine workers and the traditional dangers and risks ordinarily

associated with coal mining. We find nothing in the text of these administrative regulations which would indicate that McCarty was within the class of persons to be protected, or that his injuries were within the type of harms to be prevented by the regulations. We have examined the additional range of regulations cited in the certified question (Sections 805 and 825), and are unable to locate any provision which would change the result of our discussion as set forth herein.

2015 WL 6593081, at *8.

Although not included in our certified question, the Kentucky Supreme Court also considered and rejected Plaintiffs' reliance on KRS 350.020, which identifies certain hazards and dangers of "unregulated surface coal mining operations." *Id.* The court concluded that "[t]he fortuitous installation of a heavy garage door on a coal mining site has no nexus with unregulated coal mining, and is therefore, not among the hazards addressed by KRS Chapter 350." *Id.*

Finally, the Kentucky Supreme Court rejected Plaintiffs' reliance on *Hargis v. Baize*, 168 S.W.3d 36 (Ky. 2005), to support their assertion that the administrative regulations promulgated to protect the safety of employees in a regulated workplace also protect independent contractors exposed to the same hazards. The state supreme court found *Hargis* distinguishable because the deceased contractor was engaging in the type of work that was a core function of the regulated business, and here, the installation of a garage door "is entirely unrelated to Covol's core business." *McCarty*, 2015 WL 6593081, at *9.

In sum, for the reasons stated by the Kentucky Supreme Court in its opinion certifying the law, which we quote in part and incorporate in its entirety, Plaintiffs do not have a cause of action for negligence under a negligence *per se* theory. Thus, the district court did not err in granting summary judgment to Covol on Plaintiffs' negligence per se claim.

### B. Voluntary Assumption of Duty Theory

Plaintiffs also allege that Covol can be held liable for McCarty's death because it assumed a duty of care under the Restatement (Second) of Torts § 323. First, Plaintiffs argue that Covol assumed a duty to McCarty by adopting certain internal safety policies and procedures applicable to contractors and subcontractors. Second, Plaintiffs claim that Covol assumed a duty to McCarty by undertaking to provide him with all equipment and training necessary to safely complete the garage door installation. Section 323 of the Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).

Plaintiffs' first argument is rooted in Covol's alleged noncompliance with internal safety policies and procedures. However, Kentucky rejects the notion that "a person or business entity's adoption of an internal guideline or policy and subsequent failure to follow that internal guideline automatically leads to liability under [Restatement (Second) of Torts] § 324A." *Morgan v. Scott*, 291 S.W.3d 622, 632 (Ky. 2009). Thus, as the district court held, Covol's

failure to follow its internal safety policies cannot without more form the basis of liability for McCarty's accident under Kentucky law.[2]

Second, Plaintiffs claim that Covol represented to McCarty that Covol would provide all the equipment and training needed to complete the job safely, that its failure to do so increased the risk of harm to McCarty, in violation of section 323(a), and that he suffered harm as a result of his reliance on Covol's representations, in violation of section 323(b).

Plaintiffs cannot satisfy section 323. Even if Covol initially promised to provide safety equipment and training to McCarty, and these promises are considered "rendering services," Covol never actually provided equipment or training and therefore could not have failed to exercise reasonable care that would have increased the harm to McCarty under section 323(a). *See Myers v. United States*, 17 F.3d 890, 903 (6th Cir. 1994) (holding that the plaintiffs could not proceed under Section 324A(a) of the Restatement where they failed to allege facts showing that the defendant affirmatively made, or caused to be made, a change in the conditions that created or increased the risk of harm that befell the plaintiffs); *Morgan*, 291 S.W.3d at 632-33 (holding that the plaintiffs could not have reasonably relied on the defendant's in-house safety policy because "[t]he existence and subsequent non-observance of the in-house rule did nothing to increase [the] risk" to the plaintiffs). It is undisputed that H & B provided the allegedly defective ladder, not Covol. Further, Covol's site manager testified that Covol did not inspect H & B ladders, except when used by Covol employees. H & B representatives confirmed that Covol did not inspect H & B ladders. Plaintiffs do not assert otherwise.

---

[2] Section 324A parallels § 323 but protects third parties from harm by one who undertakes to render services to another. *See* Restatement (Second) of Torts § 324(A). This holding in *Morgan* was not premised upon the distinction between § 323 and § 324A, and therefore the same reasoning would apply to § 323.

Furthermore, McCarty did not detrimentally rely upon Covol's alleged undertaking within the meaning of section 323(b). Plaintiffs do not allege that McCarty and Means chose to forego other precautions in reliance on Covol's alleged promises of training and equipment. Rather, they started working on the garage door without Covol's equipment or training, aware that Covol had not provided any training or equipment. Thus, McCarty did not rely on any alleged promise to his detriment within the meaning of section 323(b). *See Myers*, 17 F.3d at 903 (holding that the plaintiffs' claim under section 323(b) failed because they failed to allege that they relied on government mine inspections to their detriment).

The district court properly rejected Plaintiffs' assumption of duty of care theories.

**C. Motion for Sanctions**

Plaintiffs also appeal the district court's denial of their motion for sanctions. In the district court Plaintiffs moved for partial summary judgment based on Covol's loss or destruction of the ladder, Covol's sign-in sheets for the training center for the day of the accident, McCarty's harness and lanyard, and cell phones of certain Covol employees. The district court concluded that even though Covol had a duty to preserve evidence, and that Covol had negligently disposed of some evidence, Plaintiffs failed to establish the relevance of any of the designated evidence to a particular claim.

We review the district court's decision whether to impose sanctions under its inherent power for abuse of discretion. *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Id.* (internal quotation marks and citation omitted). Federal law of spoliation

applies to a case litigated in federal court. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc). "Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003) (citing BLACK'S LAW DICTIONARY 1401 (6th ed. 1990)). A litigant may be sanctioned for spoliation of evidence if three conditions are met: (1) the party with control over the evidence must have had an obligation to preserve it at the time it was destroyed, (2) the accused party destroyed the evidence with a culpable state of mind, and (3) the evidence destroyed must be relevant to the other side's claim or defense. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citations omitted).

Neither party disputes that Covol had a duty to preserve the evidence at the time it was disposed of. The district court also correctly found some level of culpability on the part of Covol. We agree that, at a minimum, Covol's actions with respect to the disputed evidence were negligent. This is sufficient for a spoliation finding, as "'[t]he culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Beaven*, 622 F.3d at 554 (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)) (emphasis and alteration omitted).

The district court denied Ms. McCarty's spoliation motion, finding that her negligence theory based in common law was "the only potentially viable claim," that Plaintiffs "were unable to show that Defendant had actual knowledge of a latent defect in the ladder that would have triggered a duty to warn McCarty," and that none of the allegedly spoliated evidence could resolve that issue. *McCarty v. Covol Fuels No. 2, LLC*, 978 F. Supp. 2d 799, 815 (W.D. Ky. 2013). But the point of the relevance prong of the spoliation analysis is not to inquire whether

the lost or destroyed evidence was dispositive; rather, the party seeking a spoliation sanction must "ma[ke] 'some showing indicating that the destroyed evidence would have been relevant to the contested issue,'" *Beaven*, 622 F.3d at 554 (quoting *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998)), "such that 'a reasonable trier of fact could find that it would support that claim,'" *id.* at 554–55 (quoting *Residential Funding Corp.*, 306 F.3d at 107). The district court abused its discretion by applying a heightened relevancy standard to Ms. McCarty's request for spoliation sanctions.

In fact, two of the items at issue are relevant. The stepladder could arguably bear on Covol's alleged breach of its "duties to remove the defective stepladder from the mine property and . . . inspect the post frame building prior to McCarty beginning work," Appellant Br. at 45, as well as whether defects in the ladder were in part the cause of the accident. The ladder, along with the lanyard and harness, also bear on Covol's alleged assumption of a duty to examine the equipment being used by McCarty and to train him on use of a fall-prevention system with which he may not have been familiar. The other items, however, do not have any clear relevance, for it is undisputed that McCarty and Means were neither signed in nor hazard trained on the day of the accident, and any argument that materials might have led to additional witnesses or information, *id.* at 47, improperly seeks to import a discovery rule—that something is discoverable when "the discovery appears reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1)—into the unrelated context of spoliation. Finally, Ms. McCarty's argument regarding the cell phones does not establish the relevance of those devices, focusing on text-message and phone-call records that, as Covol points out, would have been discovered when "McCarty obtained voluminous cell-phone records from Covol and AT&T." Appellee Br. at 50.

Although Ms. McCarty established the elements of spoliation, we conclude that she is not entitled to any spoliation remedy that would alter the outcome of this appeal. To the extent that Ms. McCarty sought an adverse factual inference as a remedy for the spoliation, her request is moot. Where adverse factual inferences would do nothing to save a claim that is subject to dismissal for independent legal reasons, a spoliation claim is moot insofar as it seeks such inferences. *See Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 977 (10th Cir. 1994) (where the discretionary-function exception to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), barred a plaintiff's claims regarding an aircraft crash, the Tenth Circuit did not reach plaintiff's spoliation argument regarding the government's alleged failure to preserve the physical crash scene because "[i]t would be nonsensical for a court to hold that a government actor's decisions were protected under the discretionary function exception to the FTCA, then to turn around and apply a presumption of unfavorability against the actor"). No adverse factual inference related to the spoliated evidence—the stepladder, harness, and lanyard—would alter our legal conclusions that the negligence theories pursued by the Plaintiffs on appeal must fail. The Kentucky Supreme Court's conclusion that a negligence *per se* theory cannot be utilized in this case was premised upon the fact that "Mr. McCarty was not 'within the class of persons intended to be protected by the statute'" and the cause of McCarty's death "is not the type of occurrence that the . . . mining statutes were intended to prevent." *McCarty*, 2015 WL 6593081, at *7. No factual inference connected to the condition of the ladder and harness would affect those fundamental facts. Nor would such inferences alter our conclusion regarding the assumption of duty theory, which we reject because: (1) Kentucky law does not recognize an assumption based solely upon an entity's failure to follow its own safety policies; and (2) Covol did not fail to

exercise reasonable care in rendering any services that increased the risk to McCarty; and (3) McCarty did not detrimentally rely on any alleged undertaking by Covol to render services.

Ms. McCarty's spoliation request would not be moot if she were able to demonstrate entitlement to a stronger remedy such as entry of judgment in her favor. The availability of such a remedy would give her the requisite "'legally cognizable interest in the outcome'" that is required to avoid a finding of mootness. *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008) (quoting *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979)). But granting judgment "is severe and constitutes the ultimate sanction for spoliation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001). "At bottom, to justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." *Id.* Neither circumstance is present here.

Ms. McCarty has not shown sufficiently bad faith, in light of record evidence that Covol was told by MSHA to dispose of the ladder, harness, and lanyard. On the existing record, the actions of Covol and its employees are not "conduct . . . so egregious as to amount to a forfeiture." *Id.* Nor is the evidence so vital to Ms. McCarty's claim. In *Silvestri*, the Fourth Circuit found dismissal to be appropriate where a plaintiff, who sued General Motors for automobile defects that allegedly contributed to an accident, made no effort to preserve the vehicle, despite conducting his own tests on the vehicle in anticipation of litigation. *See id.* The destruction of the allegedly defective vehicle "denied General Motors access to the only evidence from which it could develop its defenses adequately," and even the plaintiff's own

records of his agent's inspection of the vehicle did not include all of the necessary information. *See id.* at 594. The spoliated evidence in this case, while important, is not so central. Evidence of the ladder's defective condition is in the record in the form of a post-accident report and photograph of the ladder. Nor are the ladder, lanyard, and harness the principal causes of the accident—unlike the car in *Silvestri*—rather, they are contributing factors that are relevant insofar as Covol had a duty to inspect them, warn about them, or train McCarty on their use. Judgment against Covol is therefore not appropriate as a remedy for the spoliation in this case because the evidence, while potentially important, is not so vital as to preclude Plaintiffs from putting on a case in its absence.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.