**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0788n.06

**No. 10-5206**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | ***Nov 22, 2011*** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JASON QUALLS, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MARTIN, GUY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Jason Qualls appeals his convictions for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). He argues that the district court erroneously admitted evidence regarding two prior drug transactions, and committed plain error in the wording of the limiting instruction given to the jury after this testimony was admitted. We disagree and therefore affirm.

I.

The events giving rise to this case began when Metropolitan Nashville Police Department Detective Jean McCormack received information that illegal narcotics were being distributed from the residence at 910 Cahal Avenue in Nashville, Tennessee. Detective McCormack arranged for a confidential informant to make a controlled buy. The informant called a man known as "Jay" and

arranged to meet with him to purchase crack cocaine. Detective McCormack then searched the informant and the informant's vehicle for contraband, gave the informant previously photocopied currency with which to make the controlled buy, and followed the informant to the designated location.

In the meantime, Officer Matthew Valiquette staked out the residence at 910 Cahal Avenue. He observed a white Dodge Intrepid pull into the driveway; saw the front door of the residence open, but could not tell whether anyone left the house; and then watched the Intrepid drive away. At that point, Officer Valiquette radioed other officers, who followed the vehicle to the location of the controlled buy, where Detective McCormack was waiting.

At the location of the controlled buy, Detective McCormack then observed a white Dodge Intrepid being driven by a black woman, with a black man riding in the passenger seat, pull up to a stop sign. She watched the man exit the Intrepid, approach the driver's-side door of the informant's vehicle, and engage in a brief exchange with the informant. Detective McCormack testified at trial that she recognized the man from the Intrepid as Jason Qualls.

After the Intrepid drove away, the informant met with Detective McCormack and turned over a yellow, rock-like substance that tested positive for cocaine base. Detective McCormack searched the informant and the informant's vehicle to confirm that the informant did not possess any additional contraband.

While the informant was meeting with Detective McCormack, other officers followed the Intrepid back to 910 Cahal Avenue. Officer Valiquette, who had maintained surveillance of the

residence during this time, watched the Intrepid pull into the driveway. He observed a black woman and a black man exit the vehicle and go inside the house.

A couple of days later, Detective McCormack again met with the informant to arrange a controlled buy. Following the informant's phone call to "Jay," Officer Valiquette observed a black man and a black woman exit the residence at 910 Cahal Avenue and get into a white Dodge Intrepid. As before, other officers followed the Intrepid to the designated location, where the informant, under surveillance by Detective McCormack, was waiting.

From her vantage point, Detective McCormack observed the Intrepid pull up next to the informant's vehicle. She watched the informant approach the passenger side of the Intrepid and engage in a brief exchange with the man she recognized as Qualls. After the exchange, the informant met with Detective McCormack and turned over a "yellowish rock" that tested positive for cocaine base; the informant and the informant's vehicle were searched; and other officers followed the Intrepid back to the 910 Cahal Avenue residence.

Over the next few days, the police determined that the Intrepid was registered to Quantina Williams of 910 Cahal Avenue. The police also conducted a records check of 977-1807, the phone number used by the informant to contact "Jay," and determined that the number belonged to Jason Qualls. Although Detective McCormack later stated in an affidavit that the number for which the record check was conducted was 977-1809, she explained at trial that the last digit of the number listed in the affidavit was a typographical error.

Based on the results of this investigation, Detective McCormack obtained a warrant to search the premises of 910 Cahal Avenue. She executed the warrant with the assistance of other Metropolitan Nashville Police Department officers and Agent Wayne Kilday of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The officers conducted a knock and announce, received no response, and forcibly entered the residence. Inside, they found Quantina Williams and three children.

While the officers conducted the search, Williams telephoned Qualls and asked him to come to the residence. When Qualls arrived a short time later, the officers placed him in handcuffs and read him his *Miranda* rights. Qualls subsequently told the officers that any illegal narcotics they found in the 910 Cahal Avenue residence were his, not Williams.

The search of the residence revealed a .25 caliber pistol, a .32 caliber revolver, two sets of digital scales, 1.6 grams of cocaine base, and $2,767 in United States currency. Qualls told Agent Kilday that he purchased the revolver "from a guy" for $30. Qualls also stated that he bought the pistol for $40 and that he kept both firearms for protection. Much of the currency was found in Williams' purse, some of which was linked to the controlled buys.

Qualls was subsequently indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924, and for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). He moved to suppress the evidence found at the 910 Cahal Avenue residence, as well as his statements to the police. Qualls also moved to exclude evidence

of the controlled drug buys that lead to the search and his subsequent arrest. The district court denied both motions.

At trial, Williams testified that she and Qualls had been involved in a romantic relationship, and that he often left clothes and other personal items at her residence. She further testified that the digital scales, crack cocaine, and firearms recovered during the search did not belong to her; that a hat found resting on one of the guns belonged to Qualls; that some of the money in her purse came from Qualls; that his nickname was "Jay"; and that, on occasion, she would drive Qualls to meet people and did not ask the purpose of such meetings.

The jury found Qualls guilty on both counts. After the verdict was returned, Qualls moved for judgment as a matter of law or alternatively for a new trial. The district court denied his motion. Thereafter, the district court sentenced Qualls to 120 months' imprisonment on each count, to run concurrently with each other and with existing state sentences, and to three years supervised release on Count One and six years supervised release on Count Two, also to run concurrently. Qualls timely appeals his convictions.

## II.

Qualls argues that his convictions should be vacated for two reasons: (1) the district court erroneously admitted evidence of the prior controlled drug buys as background evidence and, alternatively, as "other acts" evidence under Federal Rule of Evidence 404(b); and (2) the district court plainly erred in the wording of the limiting instruction regarding the drug-buy evidence. We consider these arguments in turn.

A.

Qualls first contends that the district court erroneously admitted evidence of the prior controlled buys as background evidence. Pursuant to Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). However, "[w]here the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime charged, Rule 404(b) is not applicable." *United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010). "Proper background evidence has a causal, temporal or spacial connection with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). It typically is "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."[1] *Id.* We review a district court's decision to admit such evidence for an abuse of discretion, *id.*, meaning that we will affirm unless we are "left with the definite and firm conviction that the district court committed a clear error of judgment[.]" *United States v. Copeland*, 321 F.3d 582, 596 (6th Cir. 2003).

Qualls claims that the district court "did not consider [the] causal relationship or spatial connection between the prior transactions and the guns and drugs in the indictment." He emphasizes that while "the indictment charged [him] with possession of the contraband found in a home, the

---

[1]In *United States v. Gonzalez*, 501 F.3d 630, 639 (6th Cir. 2007), a panel of this court suggested that a narrative definition of background evidence such as "completes the story" may be too broad. But we need not, and therefore do not, rely on such an expansive definition of background evidence in this case.

controlled buys were drug transactions committed from a car." Qualls also asserts that "[t]he story of how officers came to be involved with Jason Qualls begins with the execution of the search warrant" and that "[t]he jury did not need to know how the police obtained their search warrant." We find these arguments unconvincing.

The district court did consider the connection between the controlled buys and the charged conduct, concluding that they occurred "very, very close in time" and that the controlled buys "precede[d] and support[ed] the search." Qualls' observation that the controlled buys took place from a vehicle, while the charged conduct was for possession of drugs at a residence, is a distinction without a difference. What matters is that both the controlled buys and the conduct charged in the indictment involved Qualls' distribution of cocaine base out of the Cahal Avenue residence over the course of a few days. Moreover, inasmuch as evidence regarding the controlled buys showed Qualls' intent to distribute the drugs found during the search of the residence, it was directly probative of the charged offense, and the jury needed to know about it. On this record, we are not left with a definite and firm conviction that the district court committed a clear error of judgment in admitting evidence of the controlled buys as background evidence.

Furthermore, the district court also properly admitted the evidence pursuant to Federal Rule of Evidence 404(b). Under Rule 404(b), "other acts" evidence is admissible when (1) there is sufficient evidence that the "other acts" took place; (2) the evidence has a proper purpose identified in Rule 404(b); and (3) the evidence is not substantially more prejudicial than probative. *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008) (citing *United States v. Lattner*, 385 F.3d 947, 955

(6th Cir. 2004)).  We review a district court's decision to admit evidence under Rule 404(b) for an abuse of discretion.[2]  *See United States v. Allen*, 619 F.3d 518, 524 n.2 (6th Cir. 2010); *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002).

In this case, the district court did not abuse its discretion in finding that all three Rule 404(b) requirements were satisfied.  First, there was sufficient evidence that the controlled buys occurred and that Qualls participated in them.  Detective McCormack testified that she recognized Qualls as the man involved in the controlled buys;[3] Officer Valiquette testified that he saw a black man leave and return to Williams' house before and after the controlled buys; and Williams testified that Qualls was the only other adult who stayed at her house and that she sometimes drove him to meet people.  Additionally, the record showed that Williams contacted Qualls during the execution of the search warrant; that Qualls admitted the narcotics and firearms recovered by police at 910 Cahal Avenue were his; and that the number called by the informant belonged to Qualls and was answered by a man known as "Jay," which was Qualls' nickname.  The district court's conclusion that there was

---

[2]Qualls argues that, per *United States v. Gessa*, 971 F.2d 1257 (6th Cir. 1992), we should apply a three-tiered standard of review.  However, we need not address this argument because it makes no difference in this case.  The first step of the *Gessa* framework would require us to review the district court's factual finding for clear error, which is consistent with the abuse of discretion standard "because it is [an] abuse of discretion to make errors of law or clear errors of factual determination," *Bell*, 516 F.3d at 440 (citation omitted); the second step is not in dispute; and the third step, under either standard, is reviewed for an abuse of discretion.

[3]Qualls claims that the typographical error in the phone number listed in the affidavit undermined Detective McCormack's testimony to the extent that there was insufficient evidence to find by a preponderance of the evidence that the prior bad acts occurred.  However, Detective McCormack's explanation was reasonable, and the district court did not clearly err in crediting her testimony.

sufficient evidence for the jury to reasonably conclude that the controlled buys took place and that

Qualls participated in them was thus not clearly erroneous. *See Bell*, 516 F.3d at 440.

Second, the evidence had a proper purpose under Rule 404(b): to show Qualls' intent to

distribute the cocaine base recovered from the 910 Cahal Avenue residence. *See* Fed. R. Evid.

404(b) (explaining that "[e]vidence of other crimes, wrongs, or acts" may be used to prove "motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). We

have "repeatedly recognized that prior drug-distribution evidence is admissible to show intent to

distribute." *See United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007) (citing *United States v.

Jenkins*, 345 F.3d 928, 938 (6th Cir. 2003)); *see also Bell*, 516 F.3d at 444. Here, as Qualls

concedes, the controlled buys tended to show his intent to distribute the cocaine base as charged in

the indictment because the controlled buys occurred close in time to the charged conduct and were

similarly associated with the residence at 910 Cahal Avenue.

Third, the "probative value" of the drug buy evidence was not "substantially outweighed by

the danger of unfair prejudice." Fed. R. Evid. 403. To establish that the evidence should have been

excluded, it is not enough that the "legitimate probative force of the evidence" would have resulted

in damage to defendant's case; rather, the evidence must have "tend[ed] to suggest [a] decision on

an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (citation and

internal quotation marks omitted; second alteration in original). In reviewing a district court's

determination on this issue, we consider: "(1) whether the other act evidence was unduly prejudicial;

(2) the availability of other means of proof; (3) when the other acts occurred; and (4) whether the

district court gave a limiting instruction." *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998) (citation omitted). We view the evidence "in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Allen*, 619 F.3d at 525 (quoting *United States v. Perry*, 438 F.3d 642, 649 (6th Cir. 2006)).

Qualls argues that the drug buy evidence was substantially more prejudicial than probative because the evidence concerned other crimes and therefore created a risk that the jury "would make the impermissible leap that Qualls had the propensity to possess narcotics"; because the digital scales were a "readily available and far less prejudicial" alternative means of proving his intent to sell; and because, rather than solving the problem, the district court's limiting instruction "compounded it." We are not convinced. Evidence is not unduly prejudicial merely because it involves other crimes. *See, e.g., Ayoub*, 498 F.3d at 548; *see also* Fed. R. Evid. 404(b). Further, although the digital scales could have shown Qualls' intent to distribute, Qualls consistently maintained that the digital scales did not belong to him, rendering the drug buy evidence uniquely probative of his intent. Finally, Qualls' assertion that the district court's limiting instruction weighed against admission of the evidence is without merit. The instruction provided that the drug buy evidence was only to be considered for purposes of establishing Qualls' intent, and, as explained below, that instruction was proper.

Because the drug buy evidence was not unduly prejudicial, other proof of intent was not realistically available, the controlled buys and the charged conduct occurred over the same short period of time, and there was an appropriate limiting instruction, we conclude that the district court

did not abuse its discretion in finding that the probative value of the evidence outweighed its prejudicial effect. Accordingly, the district court's decision to admit the drug buy evidence under Rule 404(b) satisfies all three prongs, and Qualls' assignment of error must be rejected.

B.

Qualls also argues that the district court plainly erred in giving a limiting instruction to the jury regarding the drug buy evidence. To establish plain error, Qualls must show: (1) there is an error; (2) the error is clear or obvious; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Marcus*, 560 U.S. ___, 130 S. Ct. 2159, 2164 (2010); *see also United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008). After the direct examination of Detective McCormack, the district court instructed the jury:

> Members of the jury, the testimony about the two controlled buys, this defendant is not charged with the two controlled buys, that testimony was admitted only for the purpose of proving the defendant's intent to distribute cocaine as charged in the indictment. These are not separate crimes and you may not consider them as separate crimes. They are only admitted for that purpose.

Qualls asserts that this instruction was plainly erroneous because it "failed to instruct the jury that the prior acts are *alleged* to have occurred and, by their plain meaning, indicate the judge's belief that they did occur and were committed by the defendant." (Emphasis in original.) According to Qualls, this "create[d] the risk that the jury [would] abdicate its responsibility to evaluate the evidence in deference to the judge." (Appellant's brief at 22 (quoting *United States v.*

*Rubio-Villareal*, 967 F.2d 294, 299 (9th Cir. 1992))). And, Qualls claims, "[t]his clear error almost certainly had an effect on the outcome of the proceedings because . . . the whole case hinged upon the prior act evidence" inasmuch as "[t]he theory of the defense – that everything was Quantina Williams' and that Qualls took the blame as an act of protection – had a much higher likelihood of success if the judge had permitted the jury to conclude that it was not Qualls who participated in the controlled buys." We disagree.

The problem with Qualls' argument is that it rests on a faulty premise. Contrary to Qualls' contention, nothing in the limiting instruction conveyed the district court's view as to whether the controlled buys took place or whether Qualls participated in them. Instead, the district court's instruction correctly and repeatedly referred to the evidence as "testimony" – not as fact – and the district court previously instructed the jury that it was free to believe or disbelieve testimony. Qualls has cited no support for his claim that the district court was required to use the word "alleged," and we have found none. Furthermore, even if the district court's failure to include the word "alleged" had somehow implied its view of the facts, any such exceedingly strained inference would have been dispelled by the court's prior instruction to the jury that "[y]ou should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be." Qualls has therefore not shown error, let alone plain error.

### III.

For these reasons, we affirm the judgment of the district court.