NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0112n.06

No. 13-2287

**FILED**
Feb 06, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

SAMUEL CHARLES RICHARDSON,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

BEFORE:    GUY, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Samuel Richardson appeals his conviction and sentence for one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Specifically, Richardson appeals from the district court rulings that his 1998 conviction for two counts of delivering less than 50 grams of narcotics was admissible under Federal Rule of Evidence 404(b); the 1998 conviction was also admissible under Federal Rule of Evidence 609; denying his motion to suppress statements he made to police officers during his interrogation; and sentencing him as a career offender pursuant to United States Sentencing Guideline § 4B1.1.

For the reasons set forth below, we hold that the district erred in admitting evidence of the 1998 conviction under Rule 404(b), and we **VACATE** Richardson's conviction and sentence.

# BACKGROUND

## I.     Procedural History

Samuel Richardson was indicted in federal district court for one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). A jury found him guilty of both counts upon the conclusion of a three-day trial.

The government sought a sentencing enhancement, pursuant to 21 U.S.C. § 851, whereby Richardson would be classified as a career offender under § 4B1.1 of the United States Sentencing Guidelines based on two prior narcotics distribution offenses: Richardson's 1997 guilty plea to one count of delivering or manufacturing marijuana, and his 1998 guilty plea to two counts of delivering less than fifty grams of crack cocaine. The district court classified Richardson as a career offender and sentenced him to a 262-month term of confinement.

## II.    Facts

In late-September 2011, police officers executed a search warrant at Richardson's home in Saginaw, Michigan. They found nine grams of crack cocaine, some marijuana, a razor blade, a digital scale, baking soda, and a box of plastic baggies. The officers also found $260 on Richardson's person and a loaded Ruger .357 revolver that was hidden in his bedroom.

While the officers searched the residence, Richardson became violently ill. He began vomiting and sweating profusely, and he complained of lightheadedness and chest pains. Richardson, accompanied by two officers, was transported by ambulance to a nearby hospital.

Immediately upon arriving at the hospital, Richardson was admitted, taken to a patient room, and given pain medication and an anti-nausea drug.

During the first few minutes at the hospital while the nursing staff was checking Richardson's vitals, Trooper Neil Sommers read Richardson his *Miranda* rights off of a card. Sommers testified that Richardson nodded his head affirmatively and said "yeah" when asked if he understood his rights and was willing to talk to the officers. At that point, Sommers turned on a digital recorder to tape the interrogation, but unbeknownst to him, it stopped recording shortly after he turned it on. The device turned off and on during the hours-long interrogation, and most of the conversation was not recorded.

During the questioning, Richardson was handcuffed to the hospital bed, and the officers and hospital staff were going in and out of the room. Richardson's physical condition improved almost immediately upon arriving at the hospital, and he engaged in a lengthy dialogue with the officers. The officers testified that Richardson twice admitted to being a drug dealer and also confessed that there were nine grams of crack cocaine and a handgun in his house.

After Richardson was indicted, his attorney filed a motion to suppress the statements he made during his interrogation at the hospital. Counsel argued that the statements should be suppressed because Richardson was questioned while receiving treatment for an acute condition and because the police failed to record most of the interrogation. The district court held a hearing on the matter and then denied the motion.

Prior to trial, while negotiating a potential plea agreement with the government, Richardson filed a motion to determine whether he would be sentenced as a career offender

under § 4B1.1 of the Guidelines. The district court ruled that it would classify him as a career offender; as a result, Richardson rejected the government's plea deal and proceeded to trial.

At trial, the only contested issue was Richardson's intent to distribute the drugs found in his residence. He stipulated that he was a felon, that he possessed the firearm, and that he possessed the narcotics.

The government called several police officers as witnesses. One officer testified that he conducted "trash pulls" at Richardson's home pior to the execution of the search warrant. The officer testified that during the trash pulls, he recovered marijuana, joints, sandwich baggies with missing corners, and baggies with a white residue suspected to be cocaine. Another officer testified about the items recovered during the raid—nine grams of crack cocaine, some marijuana, a razor blade, a digital scale, baking soda, a box of plastic baggies, $260 in cash, and a handgun. The government also played portions of the audio recording of Richardson's interrogation and called the two officers who questioned Richardson to testify as to the substance of the conversation. A narcotics investigator also testified and opined that the items found at Richardson's home were indicative of drug distribution.

Richardson's counsel cross-examined the officers and elicited testimony that there was no direct evidence that Richardson was a drug dealer aside from the statements he allegedly made to his interrogators.

After the government indicated that it was prepared to close its case-in-chief, the court and the parties discussed whether the jury would be allowed to consider the lesser included offense of possession even if Richardson did not testify. During this discussion, the government stated its intention to impeach Richardson if he testified, under Federal Rule of Evidence 609,

with the record of his 1998 conviction for drug trafficking. The district court agreed to instruct the jury on the lesser included charge and also ruled that the government could impeach Richardson with his prior conviction under Rule 609. After a lengthy, on-the-record colloquy between Richardson and his counsel, Richardson decided not to testify.

The next morning, the district court considered the government's request to introduce evidence of Richardson's 1998 conviction pursuant to Federal Rule of Evidence 404(b). The government argued that "the fact that defendant has engaged in distribution in the past shows his intent here." [R. 55, Tr. Jury Trial III, PGID 607.] Defense counsel objected that the evidence was unduly prejudicial. After the district court concluded that the conviction was admissible under Rule 404(b), the government called a police officer to testify that Richardson had in fact been convicted of two counts of drug distribution in 1998. A certified record of the conviction was also admitted into evidence.

The district court instructed the jury that it could only consider the evidence of Richardson's 1998 conviction as it related to his intent to distribute in the present case. The jury returned a guilty verdict on both counts of the indictment, and Richardson was sentenced to 262 months in prison.

## DISCUSSION

### I.     Admissibility of the 1998 Conviction under Federal Rule of Evidence 404(b)

"Under Rule 404(b), a court may admit evidence of a defendant's 'other' or 'similar' bad acts or crimes only if the evidence is probative of a relevant fact, and not to show the defendant's 'character' or 'propensity' to commit bad acts." *United States v. Mack*, 258 F.3d 548, 552–53 (6th Cir. 2001) (citation omitted). Such bad acts may be relevant to "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid.

404(b)(2). Before the trial court may admit evidence of a prior bad act under Rule 404(b), it must determine that: (1) sufficient evidence exists that the bad act actually occurred; (2) the bad act is admissible for a proper purpose; and (3) the probative value of the bad act evidence is not substantially outweighed by the risk of unfair prejudice. *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013).

We generally review a district court's evidentiary determinations for an abuse of discretion. *United States v. Gainer*, 468 F.3d 920, 925 (6th Cir. 2006). However, Rule 404(b) determinations are examined using a three-part test in which the finding that the bad act took place is reviewed for clear error,[1] the conclusion that the evidence was admissible for a proper purpose is reviewed *de novo*, and the determination that the probative value of the bad act evidence is not substantially outweighed by its unfairly prejudicial effect is reviewed for an abuse of discretion.[2] *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008); *see also United States v. Magoti*, 352 F. App'x 981, 984 (6th Cir. 2009); *but see United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010) (reviewing all aspects of the district court's Rule 404(b) ruling for abuse of discretion). Although there is an intra-circuit split on the proper standard of review, *see United States v. Love*, 254 F. App'x 511, 513 (6th Cir. 2007), the three-part test and the abuse of discretion standard "are not in fact inconsistent, because it is abuse of discretion to make errors of law or clear errors of factual determination." *Bell*, 516 F.3d at 440; *see also United States v. Qualls*, 447 F. App'x 698, 702 n.2 (6th Cir. 2011).

---

[1] "A factual finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008) (internal quotation marks omitted).

[2] "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Jones v. Ill. Cent. R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010) (internal quotation marks omitted).

Applying these factors to this case reveal that the trial court erred in admitting evidence of Richardson's 1998 drug conviction for the purpose of demonstrating intent, and abused its discretion in finding that the probative value of this evidence on the issue of intent was not substantially outweighed by its prejudicial impact. The error was not harmless, and therefore Richardson is entitled to a new trial.

### A.     Sufficiency of the Evidence

The first determination the district court must make before admitting a prior bad act under Rule 404(b) is whether there is sufficient evidence that the bad act occurred. A finding that there is sufficient evidence does not require the government to establish that the act occurred by a preponderance of the evidence; rather, it only need produce enough evidence whereby "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Bell*, 516 F.3d at 441 (internal quotation marks omitted).

Here, the government provided a certified copy of Richardson's 1998 conviction for two counts of crack distribution. Richardson did not challenge the accuracy of this record or the fact of his conviction at trial, and he has not done so on appeal. Accordingly, the district court's determination that there was sufficient evidence that Richardson committed the prior crimes was not clearly erroneous.

### B.     Bad Act Admissible for Proper Purpose

The second Rule 404(b) determination the district court must make is that the prior bad act is admissible for a proper purpose. "Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). In other words, to be admissible for a

proper purpose, the prior act must be probative of a material issue other than character. *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004). "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)).

In this case, the district court properly concluded that the conviction was offered for an admissible purpose that was in issue. The government offered Richardson's prior distribution conviction for the purpose of proving his intent to distribute crack in this case, and Rule 404(b) expressly permits prior bad act evidence to be used to prove intent. *See* Fed. R. Evid. 404(b)(2). As to the second point, both parties readily admit that Richardson's intent was the central issue at trial.

Where the district court erred was in finding that Richardson's prior distribution was probative of his intent to distribute in this case. Generally, "where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent." *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994). In the context of drug distribution cases, this Court has stated time and again that prior distribution evidence can be admissible to show intent to distribute. *See, e.g., United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007). Such evidence is admissible where "the past and present crime are related by being part of the same scheme of drug distribution or by having the same *modus operandi*." *Bell*, 516 F.3d at 443. Such a relationship is required because "[t]he only way to reach the conclusion that the person currently has the intent to possess and distribute based solely on evidence of *unrelated* prior convictions for drug distribution is by employing the very

8

kind of reasoning—i.e., once a drug dealer, always a drug dealer—which 404(b) excludes." *Id.* at 444 (emphasis in original).

The government's closing argument in the instant case showcases the inevitability of this chain of inference. "One thing I don't want to forget to mention in the closing is the fact of defendant's prior conviction for distribution. It's only important to show intent here. You can't consider it for anything else, only for his intent." [R. 55, Tr. Jury Trial III, PGID 639.] There was no testimony on the facts underpinning Richardson's prior conviction, and the record submitted to the jury only indicates that Richardson was convicted of two counts of distribution of crack cocaine. Without more, it is difficult to see how the fact that Richardson was convicted for distribution in 1998 is probative of his intent to distribute some thirteen years later. Under these circumstances, it is incredible to claim that the jury properly considered the evidence "only for his intent" and did not engage in propensity reasoning.

The government now offers a chain of inferences (one it did not argue to the district court and it appears the district court never considered)—"that the defendant previously distributed drugs makes it more likely that distributing drugs is something he knows how to do; that distributing drugs is something the defendant knows how to do makes it more likely that the drugs he now possesses are drugs that he intends to distribute"—that is equally unavailing. [Docket No. 36, Br. for the United States, § I.B.1.] Without more—i.e., facts indicating that the two crimes are part of the scheme, that the defendant is using the same *modus operandi*, or that the factual context is otherwise similar—the only way the bad act would be probative "is if the jury were permitted to infer that because [Richardson] has distributed drugs in the past, it is likely that he was doing so in the present case." *Bell*, 516 F.3d at 445.

At trial, the government offered no evidence that Richardson's present crime was part of the same scheme or utilized the same *modus operandi* of his then fifteen-year-old conviction for drug distribution. Consequently, the conviction was not probative of Richardson's intent to possess and distribute drugs in the instant case, and the district court erred in concluding otherwise.[3]

### C.      Probative Value versus Unfair Prejudice

The district court's determination that the probative value of Richardson's 1998 conviction outweighed its potential for unfair prejudice is reviewed for an abuse of discretion. In conducting this review, we will consider "(1) whether the other act evidence was unduly prejudicial; (2) the availability of other means of proof; (3) when the other acts occurred; and (4) whether the district court gave a limiting instruction." *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998). In recognition of the deference that should be afforded to the district court in the exercise of its broad discretion, "we look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011) (internal quotation marks omitted).

#### 1.      Unduly Prejudicial

It has already been explained why the evidence of Richardson's conviction was not probative of his intent to possess and distribute in this case, the only basis for which it was

---

[3] As previously discussed, there is an intra-circuit split on whether this element is reviewed for an abuse of discretion or *de novo*. However, because "[t]he abuse-of-discretion standard includes review to determine that the decision was not guided by erroneous legal conclusions," little turns on whether we label review of this aspect of the district court's Rule 404(b) decision abuse of discretion or *de novo*. *Koon v. United States*, 518 U.S. 81, 100 (1996). Here, the district court had no indication that Richardson's 1998 conviction was in any way related to his present crime. Thus, under either standard of review, the court reached an erroneous legal conclusion.

offered. However, even assuming that the conviction was probative on the issue of intent, it was only minimally so. Similar to the defendant in *Bell*, Richardson's distribution of drugs thirteen years prior to the instant offense "does not necessarily imply that he was intending to possess and distribute drugs on this occasion." 516 F.3d at 445. Because no facts relating to the 1998 conviction were offered into evidence to show what the conviction and the present crime shared in common other than their elements of proof, the record of conviction would only be probative if the jury were permitted to reason that because Richardson intended to commit the offense before, he intended to do it again. *See id.*; *see also United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) (explaining that the bare fact that the defendant was convicted for distributing drugs in 2000 could only be evidence that he intended to distribute drugs in 2008 under a propensity theory). This is precisely the type of propensity inference upon which the government implicitly relied and Rule 404(b) forbids.

The district court was aware that the probative value and unfair prejudice inquiry requires consideration of whether the jury would be able "to impartially place evidence in context" and consider it only for a legitimate purpose. [R. 55, Tr. Jury Trial III, PGID 609.] However, the court concluded that Richardson's convictions did not require consideration of this "balancing." [*Id.*] Instead, it briefly considered whether the conviction would "inflame or upset" the jury and concluded it would not. [*Id.*] Because the district court conducted the incorrect prejudice inquiry, it abused its discretion. *See Jones*, 617 F.3d at 850.

### 2.    Availability of Other Means of Proof

The government, by its own admission, had "compelling" evidence of Richardson's intent—his statement that he was a crack dealer, his denial of being a user, the nine grams of

crack found in his residence sitting alongside a scale and a razor blade, along with the other indicia of distribution activities, including sandwich baggies, baking soda, and a loaded firearm hidden in his bedroom. Moreover, the government seemingly had no intention of introducing the conviction under Rule 404(b) until an off-the-record discussion in chambers after it had called its last witness—another indication that there were a number of other ways the government attempted to prove intent.

### 3. When the Other Act Occurred

Richardson's prior conviction was thirteen-years-old at the time of his arrest in connection with the present case. In this Circuit, "[t]here is no absolute maximum number of years that may separate a prior act and the offense charged." *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985). One panel found a ten-year-old conviction too stale to be probative, *United States v. Freeman*, 412 F. App'x 735, 745 (6th Cir. 2010), while another panel approvingly cited to a Fifth Circuit case upholding the admission of an eighteen-year-old conviction, *Love*, 254 F. App'x at 517. In any event, the remoteness in time of Richardson's prior conviction at least weighs in favor of exclusion.

### 4. Limiting Instruction

During the jury charge, the district court read the Sixth Circuit pattern limiting instruction with regard to Richardson's prior conviction.[4] "While this Court has noted that a limiting

---

[4] "You've heard testimony that the defendant committed crimes in the past other than the ones charged in the indictment. If you find the defendant did those crimes, you can consider the evidence only as it relates to the government's claim on the defendant's intent. You must not consider it for any other purpose. Remember that the defendant is on trial here only for possession of cocaine base with the intent to distribute and the felon in possession of a firearm, not for the other act—the other acts. Do not return a guilty verdict unless the government proves

instruction may significantly mitigate prejudice in admitting 404(b) evidence, we have also recognized that limiting instructions directing the jury to regard evidence for intent when the evidence is not probative of intent does nothing to abate the evidence's prejudicial impact." *United States v. Miller*, 562 F. App'x 272, 285 (6th Cir. 2014); *see also Haywood*, 280 F.3d at 724 ("A limiting instruction . . . is not, however, a sure-fire panacea for the prejudice resulting from the needless admission of such evidence."). We conclude that because the prior conviction was not probative of intent, the district court's instructions failed to mitigate the prejudicial impact of the conviction. "[B]y directing the jury to consider [the prior conviction] for the purpose of ascertaining [Richardson's] intent, the court was implicitly approving the kind of reasoning which would suggest that because [Richardson] was a drug distributor in the past, the jury should consider him to have distributed drugs in the present case." *Bell*, 516 F.3d at 432. Furthermore, the district court's failure to determine whether the probative value of Richardson's 1998 conviction was substantially outweighed by the danger of undue prejudice was an abuse of discretion. As a result, the court's ultimate decision to admit that evidence was equally an abuse of discretion.

The district court erred in concluding that evidence of Richardson's prior conviction was admissible to prove intent and abused its discretion in finding that any limited probative value of this evidence was not substantially outweighed by its prejudicial impact.

### D.    Harmless Error Inquiry

Although the district court erred in admitting evidence of Richardson's 1998 conviction, that error does not require that he be granted a new trial unless it affected his "substantial rights."

---

the crimes charged in the indictment beyond a reasonable doubt." [R. 60, Redacted Tr. of Jury Trial III, PGID 888–89]; *cf.* Sixth Circuit Pattern Jury Instructions 7.13.

*See United States v. DeSantis*, 134 F.3d 760, 769 (6th Cir. 1998) (quoting Fed. R. Crim. Proc. 52(a)). We must "consider the impact of the error upon the right of the defendant to a fair trial," *United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999) (citation omitted), and in so doing, we look at the entire record "from the perspective of how the error might have affected the jury." *Ismail*, 756 F.2d at 1260. The "concern is not with whether there was sufficient evidence on which the defendant could have been convicted without the evidence complained of, but rather the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Bell*, 516 F.3d at 447 (internal quotation marks omitted); *see also Fahy v. Connecticut*, 375 U.S. 85, 86 (1963); *United States v. Baker*, 458 F.3d 513, 520 (6th Cir. 2006). "Harmless error typically applies where there is overwhelming admissible evidence of a defendant's guilt." *United States v. Chalmers*, 554 F. App'x 440, 452 (6th Cir. 2014) (citing *United States v. Mack*, 729 F.3d 594, 603 (6th Cir. 2013)).

There is a reasonable possibility that the admission of Richardson's prior distribution conviction contributed to the guilty verdict in this case. As previously discussed, the prior bad act had no probative value and was highly prejudicial—it gave the jury reason to convict Richardson divorced from the facts of the case before them. This remains true even when viewed in the context of all the evidence the government presented at trial. While the government's case was strong, it was not "overwhelming." Almost all of its evidence was circumstantial. The only direct evidence that Richardson may have intended to distribute the narcotics in his residence was the officers' testimony that while handcuffed to a hospital gurney, Richardson admitted that he occasionally sold crack cocaine—testimony which, it is important to note, the jury was free to disbelieve. Richardson's recorded statement that he did not eat, inject, or smoke crack was in response to an officer's concern that Richardson may have fallen ill because he consumed some

of the drugs in his residence during the police raid. It was not a blanket statement that he possessed the drugs for the sole purpose of selling them.

Though the government now argues that any error was harmless, it seems that at trial the government considered Richardson's prior conviction to be particularly compelling. The record of the 1998 conviction was the first piece of evidence mentioned by the government during summation. The government did not want to "forget" to mention the conviction because it wanted the jurors to mull over it during deliberation. [R. 55, Tr. of Jury Trial III, PGID 639.] Indeed, the government discussed Richardson's 1998 conviction twice during closing argument to achieve that effect.

"When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact. That, of course, is why the prosecution uses such evidence whenever it can." *Johnson*, 27 F.3d at 1193. We are confident that is what occurred here. Because the jury could have found Richardson guilty of the lesser included charge of possession, there is a reasonable possibility that its decision to find him guilty of possession with intent to distribute was influenced by the evidence of his prior conviction. Accordingly, the district court's error in admitting the evidence cannot be said to be harmless, and Richardson is therefore entitled to a new trial.

## II.    Admissibility of the 1998 Conviction under Federal Rule of Evidence 609

A district court's Rule 609 admissibility determination is reviewed for an abuse of discretion. *United States v. Morrow*, 977 F.2d 222, 228 (6th Cir. 1992) (en banc). However, where a party fails to object to the admission of evidence at trial, that admissibility determination

is reviewed for plain error. *United States v. Stephens*, 549 F.3d 459, 464 (6th Cir. 2008). A finding of plain error requires "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted). Because there was no objection to the district court's decision to allow the government to impeach Richardson with his prior conviction if he testified, the ruling is only reviewable for plain error. [5]

The district court ruled that Richardson's 1998 conviction would be admissible impeachment evidence in the event that he testified. In so doing, the court stated, "We agreed, I believe, that 609, Rule of Evidence 609, would permit the government to impeach him with at least the 1998 convictions in the event that he elected to testify." [R. 54, Tr. Jury Trial II, PGID 594–95.] Defense counsel confirmed the accuracy of the court's understanding as to the substance of the off-the-record conversation between the parties and the court. When the issue was first raised, defense counsel did not object to the government's intention to offer Richardson's prior conviction for impeachment purposes; he simply articulated his limited understanding of the types of prior convictions that are admissible under the rule.

The parties do not dispute that the district court erred in implicitly determining the admissibility of the 1998 conviction under Rule 609(a). The determination should have been made under Rule 609(b) inasmuch as Richardson had been released from confinement more than

---

[5] Although it is likely that this claim of error is foreclosed by Supreme Court precedent, we assume *arguendo* that the claim is reviewable because it ultimately fails. *See Luce v. United States*, 469 U.S. 38, 43 (1984) ("To raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.").

ten years prior to the date of trial in the present case. Thus, the first element of plain error review is satisfied.

Richardson also satisfies the second element of plain error review. At trial, the government informed the court that Richardson's release was within "the ten-year mark." [R. 59, Tr. Jury Trial II, PGID 851–52.] Richardson never challenged this statement. It was subsequently revealed in the pre-sentencing report that Richardson had in fact been released from confinement more than ten years prior to being tried in this case. The government argues that because the error was neither obvious nor clear at the time it was made, Richardson fails to make the requisite showing. *Cf. Henderson v. United States*, 133 S. Ct. 1121, 1130 (2013) (holding that "whether a legal question was settled or unsettled at the time of trial, it is enough that an error be plain at the time of appellate consideration" (internal quotation marks omitted)); *see also United States v. Remble*, 520 F. App'x 436, 441 (6th Cir. 2013) (quoting *United States v. Ross*, 77 F.3d 1525, 1539 (7th Cir. 1996)) (considering an error of law made by the trial court and holding that "an obvious and plain error is one that is clear and uncontroverted at the time of appeal."). Contrary to the government's contention, simply because the parties and the court were unaware of the error does not make the error any less plain. At the time the district court accepted as fact the claim that Richardson had been released within the past ten years, that "fact" was verifiably incorrect. Thus, Richardson has established that the court's error was "obvious or clear."

Where Richardson stumbles is the third element of the plain error review. In *Ohler v. United States*, the Court held that "[o]nly when the Government exercises its option to elicit the [impeachment] testimony" can the defendant "claim the denial of a substantial right if in fact the district court's . . . ruling proved to be erroneous." 529 U.S. 753, 759 (2000). *Ohler* involved a defendant who admitted the fact of a previous conviction on direct examination. The defendant

elected to do so in response to the district court granting the government's motion *in limine* to allow impeachment of the defendant with her prior felony conviction. Although the facts of the case differ greatly from those presented here, the Supreme Court was unequivocal in its view that the government must actually impeach the defendant with the prior conviction before he can be heard to appeal that the admission of such evidence was error. Because Richardson elected not to testify at trial, the government never elicited the impeachment testimony. Accordingly, the erroneous evidentiary decision did not affect his substantial rights.

For this reason, Richardson's challenge to the district court's determination that his past conviction was admissible under Rule 609 fails.

### III. Richardson's Motion to Suppress Statements He Made During Interrogation

In cases involving the denial of a motion to suppress, "this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Pacheco-Lopez*, 531 F.3d 420, 423 (6th Cir. 2008). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). "We defer to the district court's assessment of credibility, review the evidence in the light most likely to support the district court's decision, and consider the evidence in the light most favorable to the government." *United States v. Lawrence*, 735 F.3d 385, 436 (6th Cir. 2013) (citations omitted).

Richardson moved to suppress the statements he made to police officers during his hospital interrogation on the basis that the "statements were not voluntarily given" and taken in

violation of his right to due process. [R. 16, Mot. to Supress, PGID 44.] At the suppression hearing, Richardson challenged the voluntariness of his *Miranda* waiver.[6]

During the suppression hearing, the district court heard testimony from one of the arresting officers, from the registered nurse who treated Richardson at the hospital, and from Richardson himself. The officer testified that he was on the scene during the raid at Richardson's residence, and he saw Richardson become ill and accompanied him to the hospital. The officer also testified that shortly after arriving at the hospital, he read Richardson his *Miranda* rights, and Richardson waived those rights with an affirmative nod and statement to the effect of "yeah" before the questioning began. The nurse testified that Richardson's vital signs were normal and that the hospital gave him a mild pain killer and an anti-nausea drug. Richardson testified that he was familiar with his *Miranda* rights through previous encounters with the justice system, and that he remembered the officer reading him his *Miranda* rights at either his residence or the hospital, but otherwise did not remember much of his interrogation.

The district court found all the testimony to be credible except Richardson's testimony that he could not recall waiving his *Miranda* rights or making the statements to which the officer testified. This district court similarly disbelieved Richardson's selective recollection of other aspects of his time in the hospital. The court also found that Richardson had indicated to the officer that he was aware of his *Miranda* rights and wanted to waive them. Finally, the court found that Richardson's physical maladies had abated by the time he reached the hospital, and that he was capable of understanding the officers as evidenced by the extended dialogue between the parties. For these reasons, the court denied the motion.

---

[6] We assume *arguendo* that both arguments—involuntary confession and involuntary waiver—were fully considered by the lower court and adequately briefed on appeal.

We defer to the district court's credibility assessment of the officer's, the nurse's, and Richardson's testimony. *See Lawrence*, 735 F.3d at 436. Reviewing the evidence in the light most likely to support the district court's decision, we conclude that the officer's testimony and the recorded portion of the interrogation support the finding that Richardson affirmatively waived his *Miranda* rights.

Richardson's claim that his confession was involuntary fails because he presents insufficient evidence of coercion. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). He argues that his weakened mental state and the fact he was undergoing medical treatment in a small room and handcuffed to a hospital bed constitutes coercion. However, the district court found that Richardson was not in a weakened physical state and was mentally alert during his extended interrogation by the officers. Furthermore, when presented with an analogous situation where the defendant was placed in a small room, handcuffed to a chair, and questioned for several hours in the early morning, this Court held that those circumstances did not amount to coercion. *See United States v. Stokes*, 631 F.3d 802, 809 (6th Cir. 2011).

For these reasons, we affirm the district court's denial of Richardson's motion to suppress.

## IV. Richardson's Classification as a Career Offender

We review the district court's factual findings pursuant to the United States Sentencing Guidelines for clear error. *United States v. Capozzi*, 723 F.3d 720, 729 (6th Cir. 2013). Issues

regarding interpretation or application of the Guidelines are legal questions which we review *de novo*. *Id.*

While negotiating a plea agreement with the government, Richardson filed a motion for determination of whether he would be classified as a career offender under Guideline § 4B1.1. To be sentenced as a career offender under Guideline § 4B1.1, a defendant must satisfy the following three conditions:

> [T]he defendant must have been at least 18 years old when he committed the offense for which he is to be sentenced, that offense must have been a felony constituting either a 'crime of violence' or a 'controlled substance offense,' and the defendant must have had at least two prior felony convictions falling in one or the other of those categories.

*United States v. Harris*, 165 F.3d 1062, 1067 (6th Cir. 1999). "The application notes to § 4B1.1 state that, for purposes of counting prior felony convictions that can be used toward career offender classification, the provisions of § 4A1.2 are applicable." *United States v. Robertson*, 260 F.3d 500, 509 (6th Cir. 2001). The relevant provision of § 4A1.2 states:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G § 4A1.2(e)(1). Section 4A1.2(b)(2) "directs the sentencing court to count only the portion of a sentence that was not 'suspended'" when determining the "prior sentence of imprisonment" under § 4A1.2(e)(1). *Harris*, 237 F.3d at 588. Although the Guidelines do not define "suspended sentence," we have held that term only encompasses a sentence suspended by a court, not a government agency. *Id.* at 589.

Richardson has two predicate convictions that the district court considered. The first is a 1997 plea to manufacturing or delivering marijuana under Michigan law for which he was sentenced to a term of one-to-four years in prison, but served less than one year. The second is a 1998 plea to delivery of .19 grams of crack cocaine and .21 grams of crack cocaine for which he was sentenced to a term of four-to-twenty years in prison. Richardson argued that 1997 conviction could not be counted as a predicate conviction for purposes of career offender classification because he served less than one year and one month as a result of the Michigan Department of Corrections ending his sentence. In finding that he would be classified as a career offender, the district court concluded that it was not required to consider whether the term of imprisonment actually served exceeded one year and one month. Richardson argues, and the government concedes, that this conclusion was erroneous.

Now that we have vacated Richardson's conviction and sentence as a result of the Rule 404(b) error, the point at issue is whether Richardson should be afforded another opportunity to challenge whether the 1997 offense was properly considered a predicate conviction for career offender status. He claims that the district court effectively prevented him from disputing the point when it ruled that the length of time he served on that conviction was irrelevant; he wants the opportunity to present evidence concerning the early termination of his sentence. The government argues that Richardson had the opportunity to present such evidence to the district court and failed to do so. The government also argues that Richardson has offered no hint of what evidence he might provide if granted a new sentencing hearing.

The district court did consider the possibility that the length of sentence served was material to its determination of career offender status, and it concluded that Richardson's argument failed in any event because he had provided no evidence that the Michigan Department

of Corrections had the authority to suspend his sentence or in fact did so. Richardson had a full opportunity to dispute whether his 1997 conviction could be properly considered—indeed, he filed a motion arguing it could not be—but he failed to offer evidence that the proper authority suspended his sentence.[7] The question concerning the length of his 1997 sentence remains unanswered primarily because he failed to provide evidence on the point.

The district court did err as a matter of law in determining that the amount of time served was not relevant. However, when ruling in the alternative, the court concluded Richardson's claim still failed because he did not provide evidence demonstrating the basis of the early termination of his sentence. Accordingly, the district court did not err in classifying Richardson as a career offender under Guideline § 4B1.1.

## CONCLUSION

For the foregoing reasons, we **VACATE** Richardson's conviction and sentence for possession with intent to distribute crack cocaine and **REMAND** for proceedings not inconsistent with this opinion.[8]

---

[7] In fact, Richardson argued in his motion that "the Michigan Department of Corrections effectively ended" his sentence. [R. 25, Mot. for Determination of Whether Def. Must Be Classified as a Career Offender, PGID 84.] He never argued that a court ended his sentence.

[8] Richardson does not claim that the evidence of his 1998 conviction had any effect on his conviction in this case for being a felon in possession of a firearm. At trial, Richardson stipulated that he was a felon and that he possessed the firearm in question. Therefore, his conviction on the felon in possession count stands. Nonetheless, Richardson will need to be resentenced because the 262-month term of confinement imposed by the district court was for both counts for which the jury found him guilty. Because the district court did not impose discrete sentences for each count, resentencing is required.

**Helene N. White, Circuit Judge, dissenting.**

I respectfully dissent from section I(D) of the majority's discussion of the issues. Although I agree that the district court erred in admitting the Rule 404(b) evidence, I conclude that the error was harmless. The erroneous admission of other-acts evidence is harmless "if the record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error." *United States v. Mack*, 729 F.3d 594, 603 (6th Cir. 2013) (internal citations and quotations omitted). Here, apart from Richardson's confession, the items found in his home and trash—baggies with the corners cut off, baking soda, scales, cash, and nine grams of crack cocaine, or ninety individual servings—constitute overwhelming evidence of intent to distribute, not mere possession. I would therefore affirm on the basis of harmless error.

As to Richardson's other claims of error, I agree that his Rule 609 claim is foreclosed by his failure to testify, that he has shown no error in the district court's denial of his motion to suppress, and that he failed to establish that his 1997 sentence was shortened by the court.